IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

| | |
|---|---|
| DOROTHY MARSHALL LIVING TRUST, et al on behalf of itself and all similarly situated persons and entities, | **Case No. 3:26-cv-01083-L-BN** |
| PLAINTIFFS, | **PLAINTIFFS' SECOND AMENDED COMPLAINT AND IN THE ALTERNATIVE, SECOND AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| LINEBARGER GOGGAN BLAIR & SAMPSON, LLP, a Texas limited liability partnership, APPRAISAL AND COLLECTION TECHNOLOGIES LLC, a Texas limited liability company, Dallas County, Parkland Hospital District, Dallas College, Dallas County School Equalization Fund, Dallas Independent School District, and the City of Dallas, | FOR VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT AGAINST THE LINEBARGER AND APPRAISAL AND COLLECTION TECHNOLOGIES AND THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983, AND MONEY HAD AND RECEIVED AGAINST THE MUNICIPAL DEFENDANTS |
| DEFENDANTS. | **JURY TRIAL DEMANDED** |

---

# TABLE OF CONTENTS

**I.NATURE OF THE ACTION ........................................................................... 2**

**II.JURISDICTION AND VENUE....................................................................... 4**

**III. THE PARTIES ............................................................................................. 6**

**IV. FACTUAL ALLEGATIONS........................................................................ 11**

**A. THE LINEBARGER FIRM'S UTILIZATION OF FRAUDULENT AND UNAUDITED RECORDS TO COLLECT AD VALOREM TAXES................. 11**

**B. THE LINEBARGER FIRMS PATTERN AND PRACTICE OF UNLAWFUL ACTIVITY ........................................................................... 18**

**C. IGNORING THE HARRIS COUNTY STUDY......................................... 25**

**D. THE LINEBARGER FIRM IS NOT ENTITLED TO ATTORNEY IMMUNITY.................................................................................................... 26**

**E. FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS......... 27**

**V. CLASS ACTION ALLEGATIONS .......................................................... 31**

**VI. CAUSES OF ACTION................................................................................. 35**

**COUNT 1 RICO, 18 U.S.C. § 1962(c) ........................................................... 35**

**COUNT II RICO 18 U.S.C. § 1962(d) ........................................................... 36**

**COUNT III 42 U.S.C. § 1983, Due Process ................................................... 37**

**COUNT IV UNJUST ENRICHMENT……………………………………….40**

**PRAYER FOR RELIEF................................................................................... 41**

Plaintiff, DOROTHY MARSHALL LIVING TRUST ("DMLT"), JOAN E. MARSHALL AS THE TRUSTEE ("TRUSTEE"), and the other named Plaintiff, Giles Family Living Trust, on behalf of themselves and all similarly situated persons and entities by and through their designated attorneys, file this Second Amended Class Action Complaint. More than twelve years ago, in January of 2014, Trustor passed away. Despite numerous offers by Trustee to resolve this matter and pay any *ad valorem* taxes due, Plaintiff has been systematically and abusively subjected to the unlawful collection activity of the Defendant, The Linebarger Firm, to cover-up their errors and omissions, to inflate attorney's fees, and to attempt to unconstitutionally seize Plaintiff's homestead.[1] The taxing authorities have allowed and encouraged this fraudulent debt collection activity by abdicating both their role in tax collection and their role in record keeping to The Linebarger Firm and Appraisal and Collection Technologies. The systemic problem is the use of unaudited and unverified tax-account data as though it were an authoritative, verified statement of what a taxpayer presently owes All allegations in this Complaint are based upon the investigation, information and belief of counsel, except the specific allegations pertaining to the named Plaintiffs, which are based upon personal knowledge. As of the date of this Complaint, no formal discovery has been conducted. As a result, it is likely that once the discovery process is underway, the named Plaintiffs will seek leave to amend their Complaint to add new factual allegations and/or new claims.

---

[1] On January 26, 1839, the Republic of Texas' Congress passed a homestead act. It guaranteed every citizen or household that their homestead—up to fifty acres or a town lot, as well as the structures—could not be seized to pay debts. The property owned by DMLT is a registered homestead. https://statutes.capitol.texas.gov/?tab=1&code=PR&chapter=PR.41&artSec= ; See also, *Bexar Appraisal District v. Johnson,* 691 S.W.3d 844 (2024).

## I.
## NATURE OF THE ACTION

1. The Plaintiffs in this case have all been subject to a similar unlawful scheme orchestrated by the Defendants. In its role as tax collector for the various municipalities, Defendant The Lineberger Firm systematically adds substantial fees and penalties to the alleged taxes owed. The Lineberger Firm then refuses to discuss with the taxpayer the basis for the penalties and fees and adds additional fees and penalties as it stalls any proper resolution. Defendant The Linebarger Firm admits there are no proper tax records and thus cannot or will not justify/explain to the taxpayer how they arrived at the inflated taxes and penalties they demand. Homeowners, many, if not most, unrepresented, are threatened with the loss of their home, and can typically get no relief in the tax court without opinions or meaningful due process. A large number of homeowners suffer as they are threatened with loss of their homes if they do not pay the improper fees and penalties demanded by Defendant The Linebarger Firm.

2. The purported services The Linebarger Firm sells are of little value. Most of the cases are equally as simple as sworn accounts in Texas civil practice. In fact, as discussed below, Harris County has realized that Linebarger has a motive to delay resolution of delinquent tax matters which penalizes taxpayers and benefits Linebarger. As such, Harris County has moved much of its tax collection activities to the County Attorney's Office.

3. The Linebarger Firm admits (through a member of its management committee) the Dallas County tax records are unreliable, yet they sue on the inaccurate records and repeatedly, and inexplicably, change the amounts allegedly due in the course of litigation.

4. The Linebarger Firm routinely wins, and enforces, judgments against unrepresented parties based on the records that they know are wrong or unreliable and unaudited.

5. The Linebarger Firm filed "secret" collection lawsuits against Trustee that it never notified her of or attempted to serve, obviously in an underhanded attempt to toll limitations.

6. Even though the Trustee communicated with the Linebarger Firm on a regular basis, and had no presence or address in New Jersey, The Linebarger Firm employed bogus service of process artifices, including attempting service on Trustee in New Jersey, when they knew with certainty Trustee lived in the Dallas property.

7. The Linebarger Firms' contracts with the taxing authorities compensates them based on the penalty collected for late tax payments. This arrangement encourages The Linebarger Firm to delay litigation (*i.e.* run up the penalty) to the detriment of the taxpayers that hired them. Harris County identified the incentive built in such contracts to encourage delay in order to increase fees.

8. In 2020, Harris County's calculated that its taxpayers were paying $8.6–9.3 million per year, over and above statutory interest and penalties to Linebarger under a percentage-of-penalty fee arrangement, and determined that private collection firms have "an incentive to delay resolution to collect higher penalties." Harris County acted and transitioned some county delinquent tax collection to the County Attorney's Office and reported saving taxpayers roughly $8.8 million in fees

9. The Linebarger Firm's unlawful conduct is more reprehensible because many of their collection suits and foreclosures are against unpresented people in dire financial straits: they cannot pay the *ad valorem* taxes demanded to save their family homes and certainly cannot pay a lawyer to square off against Linebarger.

10. Underneath it all sits a problem — the county's auditor hasn't seen the property tax records in at least nine years. Texas law makes the County Auditor an independent watchdog,

appointed by district judges rather than elected officials, so the office can check county finances free of local control — including the tax office's books. In official audit reports for fiscal years 2017 and 2020, the Dallas County Auditor documented that the Tax Office and Linebarger's data-processing subsidiary, Defendant Appraisal & Collection Technologies (ACT), unlawfully denied him access to the county's property tax data, despite contract language requiring "unrestricted access" to those records. The Auditor's 2020 report warned the lack of transparency "raises specific concerns about potential instances of fraud which may occur and go undetected." Both reports went to the Commissioners Court; no public record shows corrective action taken, and the tax records reportedly have not been fully audited since.

11. This is a class action brought under (i) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (RICO); (ii) the United States Constitutions; and (iii) Texas common law, to remedy the Defendant's actions in making fraudulent, misleading and deceptive representations to collect *ad valorem* taxes and utilizing unaudited records in support of those claims, causing thousands of Texas persons and entities to pay *ad valorem* taxes tainted by fraud, and unlawful, excessive attorney's fees, fines and costs in direct violation of the United States Constitution and Texas law.

12. The named Plaintiffs and the Class Members seek an award of compensatory damages against Defendant The Linebarger Firm as well as an award of treble damages or treble damages against Defendant The Linebarger Firm to the extent that it is determined that their violations of Texas and Federal law were intentional, reckless and/or willful.

## II.
## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964, 28 U.S.C. § 1331, and § 1337. This Court has original federal question jurisdiction over this

action under 28 U.S.C. § 1331 because Plaintiff brings claims under RICO, which is a federal statute. 18 U.S.C. §§ 1961, *et seq*.

14. The Court also has original jurisdiction over this Class Action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), because this is a class action in which: (1) there are more than one hundred (100) members in the proposed class; (2) various members of the proposed class are citizens of states different from where Defendants are citizens; and (3) the amount in controversy, exclusive of interest and costs, exceeds $5,000,000 in the aggregate. The Court also has subject matter jurisdiction pursuant to 18 U.S.C. § 1964(c), which provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court."

15. Plaintiffs seek recovery for injuries to business or property caused by violations of RICO (18 U.S.C. §§ 1961, *et seq*.); they suffered "economic injur[ies]" that as described *infra*, are "concrete and particular and not speculative." *Soto v. Vanderbilt Mortg. & Fin., Inc.*, No. C-10-66, 2010 LEXIS 87951, at *43 (S.D. Tex. 2010).

16. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C.§ 1391 because Defendants are all subject to personal jurisdiction in this judicial district, all Defendants are residents of the State in which the district is located and this is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated.

17. This action seeks monetary damages from Defendants The Linebarger Firm and Appraisal and Collection Technologies.

18. This action does not seek to challenge the constitutionality and/or the legal validity of any Texas tax law. To the contrary, Plaintiffs and the Class Members accept the validity of all

tax laws and their tax obligations arising under same. Instead, Plaintiffs and the Class Members seek compensatory damages caused by the violations of RICO, the Civil Rights Act. As a matter of law, any monetary judgment granted against Defendants The Linebarger Firm, Appraisal and Collection Technologies, cannot reduce any tax revenue that has been collected by the municipalities. As a result, Plaintiffs and the Class Members do not seek to enjoin, suspend or restrain the municipalities from the assessment, levy or collection of any tax under state law.

## III.
## THE PARTIES

19. Plaintiff Dorothy Marshall Living Trust (DMLT) is a trust established under Texas law and Plaintiff, Trustee and beneficiary Joan E. Marshall is an individual residing in Dallas, Texas. Plaintiffs are members and proposed representative of a Class of Texas persons and entities who were systematically and abusively subjected to the unlawful collection activity of the Defendants as more fully described herein.

20. Plaintiff Giles Family Living Trust is a trust established under Texas law, has been a Dallas County taxpayer throughout the period covered by the complaint, and is a proposed representative of a Class of Texas persons and entities who were systematically and abusively subjected to the unlawful collection activity of the Defendants as more fully described herein. Giles Family Living Trust received tax bills from the Dallas County Tax Office each and every year since 2017 which contained the unaudited tax numbers.

21. Defendant Linebarger Goggan Blair & Sampson, LLP (hereinafter referred to as or "The Linebarger Firm" "Linebarger" or "LGBS"), is a Texas limited liability partnership that has a principal place of business located at The Terrace II, 2700 Via Fortuna, Suite 500, Austin, Texas 78746.

22. The Linebarger Firm acts on behalf of all of the municipal entities subject to

this lawsuit in the collection of *ad valorem* taxes through interlocal collection arrangements. All of the municipal defendants receive payments from Linebarger and ACT from these collection activities. Defendant The Linebarger Firm's website also alleges that as "a national law firm, Linebarger inspires trust and confidence in our clients that constituents' accounts will be resolved with professionalism and integrity. Before a collection notice is distributed, it is reviewed and approved by a team that specializes in legal and litigation standards. This group ensures that the firm supports a culture of compliance and adheres to federal and state laws and regulations, including Consumer Financial Protection Bureau requirements." [2] The estimated annual revenue for The Linebarger Firm is $100-500 million[3] and they represent approximately 2500 entities nationwide.[4]

23. The Linebarger Firm has been charged with unethical, illegal and improper collection practices throughout the United States.[5] For example:

---

[2] https://www.lgbs.com/why-linebarger/

[3] https://www.levernews.com/nothing-is-more-important-than-you-paying-them/

[4] https://my.ibtta.org/Membership/Member-Directory/Directory-Details-Organizations?accountid={F03158E4-1EE1-E811-80D1-02BFC0A80172}#:~:text=For%20nearly%20five%20decades%2C%20Linebarger,the%20best%20customer%20service%20possible.

[5] *See* CNN expose of Linebarger's unethical collection practices, discussed infra, which was removed from the CNN website when previously cited by Plaintiff's, but attached as Exhibit A;

https://www.insidearm.com/news/00020086-chicago-dumps-linebarger-claiming-ethics/ (last checked 8/29/2026);

https://www.c-span.org/program/washington-journal/government-debt-collection-practices/390146;

https://www.nbcdfw.com/news/local/john-wiley-price-search-warrant-released/1897795/ (listing Defendant The Linebarger Firm and several executives in the search warrant);

https://www.pressreader.com/usa/the-commercial-

- *Youngblood v. Linebarger, Coggan, Blair & Sampson, LLP,* Case No. 10-cv-2304 (W.D. Tenn. 2010) a class action case alleging that Linebarger illegally collected millions of dollars in legal fees that were not authorized by law when collecting delinquent property tax;

- *Champagne* v. *Linebarger, Coggan, Blair & Sampson, LLP,* Case No. 4:20-cv-00275 (S.D. Ohio 2020) a class action alleging that Linebarger's actions violated the Due Process Clause, Fair Debt Collection Practices Act, and Iowa Debt Collection Practices Act when collecting court fines that included falsely representing the character, amount, or legal status of the debts it was seeking to collect by failing to itemize each of their debts and specify collection fees;

- *4EC Holdings, LLC* v. *Linebarger Goggan Blair & Sampson LLP,* 3:14-cv-01944 (N.D. Cal. Sep. 23, 2014) a class action involving the unauthorized practice of law by Linebarger in California when engaging in a variety of debt collection practices; and

- *Edmund Hoy, et al. v. John Clinnin, et al.,* Case No. 37-2017-00007840-CU-BT-NC, in the San Diego Superior Court, North County Division, 2017, a class action alleging that Linebarger violated the California Rules of Professional Conduct and California Corporations Code because their designated California attorneys failed to supervise Linebarger's employees in sending out demand letters under the Linebarger letterhead to California debtors.

These collection lawsuits should have put the Municipality on notice that supervision and training of this contractor was required.

24. The Linebarger Firm represents approximately 82 Dallas County taxing entities, including: Addison, Balch Springs, Carrollton, Cedar Hill, Cockrell Hill, Coppell, Dallas, DeSoto, Duncanville, Farmers Branch, Glenn Heights, Grand Prairie, Hutchins, Irving, Lancaster, Richardson, Rowlett, Sachse, Seagoville, Sunnyvale, Wilmer, Cedar Hill, Coppell, Dallas, DeSoto, Duncanville, Grand Prairie, Lancaster, Sunnyvale, and 53 special districts: Cedar Hill PID #5, Country Club Park PID, Crescent Heights PID, Dallas County MUD #4, Deep Ellum PID, Downtown Premium PID, Downtown Standard PID, Fairway Bend PID, Forum Estates PID, Glendover Estates PID, Greenway Trails PID, High Hawk PID, High Pointe PID, Irving FCD

---

appeal/20111023/281895885013427?srsltid=AfmBOoqhxJ3Qn0YO_Uj0nRPSFsz7_3qhwxwyScc-XHuVZ8-SHANHdgGk (*Law Firm Denies Crime Culture,* last checked 8/29/2026).

Section I, Irving FCD Section III, Levee District 14, Klyde Warren PID, Lake Highlands PID, Lake Parks PID, Lancaster Boardwalk PID, Lone Star Meadows PID, Monterey Park PID, North Lake Highlands PID, Oak Hollow/Sheffield Village PID, Oak Lawn Hi Line PID, Parkview PID, Peninsula PID, Pleasant Run Estates PID, Prestonwood Standard PID, Rolling Meadows PID, Silverado Springs PID, South Dallas/Fair Park PID, Southside Premium PID, Southside Standard PID, Southwest Village PID, Stillwater Canyon PID, University Crossing PID, Uptown Standard PID, Valwood Improvement Authority, Waterford Oaks PID, Westchester PID, and Winding Hollow PID.

25. Defendants Dallas County, Parkland Hospital District, Dallas College, Dallas County School Equalization Fund[6], Dallas Independent School District, and the City of Dallas, (hereinafter referred to as "Municipal Defendants"), have contracted with The Linebarger Firm for the collection of *ad valorem* taxes. Additionally, as discussed below, the municipalities have abdicated their role in lawful tax collection and their responsibility to retain and control their public records and have turned them over to The Linebarger Firm's Appraisal & Collection Technologies, LLC ("ACT") division, a Texas limited liability company.

26. Defendant Appraisal and Collection Technologies LLC (ACT)[7] is a company based in Texas that specializes in providing software for tax collection and appraisal services. Founded on July 31, 2006, ACT operates as the commercial software division of Linebarger Goggan Blair &

---

[6] The Dallas County School Equalization Fund was the victim of rampant public corruption and has allegedly been disbanded. See https://www.nbcdfw.com/video/news/local/feds-obtain-new-guilty-plea-in-dallas-county-schools-scandal/2378752/; and https://texasscorecard.com/commentary/commentary-new-guilty-plea-in-dallas-county-schools-scandal-calls-for-citizen-reflection/
.

[7] https://actweb.acttax.com/act_webdev/acttax/index-2.jsp

Sampson, LLP. ACT's main office is located in The Linebarger Firm's Information Technology headquarters at 2915 W Bitters Road, Suite 400, San Antonio, Texas 78248.[8]

27. According to information contained in the Dallas County Contract with ACT Dallas County contracted with The Linebarger Firm for the collection of delinquent taxes in 1984. In 2001, Dallas County began using the Linebarger tax collection software, and in 2005, the contract was updated to include the upgrade of the tax collection software from a mainframe to a web-based system. This upgrade was achieved using the Appraisal & Collections Technology (ACT) software, which is a wholly owned subsidiary of Linebarger. The project was completed in 2008, and ACT continues to be the tax collection software utilized by Dallas County. The fully supported system and modules are provided at no cost to Dallas County and is valued at over $1.5 million annually. However, if Dallas County does not award the tax collection contract to Linebarger "the Annual Service Fee shall be suspended and shall not be due and payable by Client so long as the Contract for the Collection of Delinquent Taxes remains in full force and effect. " The contract with Defendants ACT and Linebarger was recommended by the Tax Assessor collector Defendant John Ames.

28. Edward Lopez, Jr., is an attorney in the Dallas, Texas office of Linebarger Goggan Blair & Sampson, LLP. He joined the firm in April 1994 and became a capital partner in December 2003. He serves on the Firm's Legal Standards Committee. Lopez represents cities, schools and other taxing entities within Dallas County, Texas. He handles litigation on all levels of trial and appeal for The Linebarger Firm. Lopez is not made a defendant in this action.

29. John R. Ames is the Tax Assessor/Collector for Dallas. He was first elected in

[8] The 2020 Contract with ACT is attached as Exhibit E.

November 2008 and re-elected in 2012, 2016, 2020, and 2024. Ames currently serves as an ex-officio member of the Dallas Central Appraisal District (DCAD) Board of Directors. Ames is not made a defendant in this action.

30. Defendant The Linebarger Firm makes at least at least $128 million a year collecting debts on behalf of local governments in Texas.[9] Recently, Lopez declined to provide the firm's profit margin for delinquent tax collection but reportedly said that in the past year the firm sent 2.1 million letters, made 712,000 phone calls and posted 2,700 properties for tax sales.[10]

## IV.
## FACTUAL ALLEGATIONS

### A. THE LINEBARGER FIRM'S UTILIZATION OF FRAUDULENT AND UNAUDITED RECORDS TO COLLECT AD VALOREM TAXES

31. The Linebarger Firm's prosecution of delinquent *ad valorem* tax cases typically involves evidence of delinquent taxes based on admission of delinquent tax rolls or individual statements. The records come into evidence without additional proof because of Texas's statutory rebuttable presumption that the records are *prima facie* evidence of the taxes due and that "each person charged with a duty relating to the imposition of the tax has complied with all requirements of law . . . ." TEX. TAX CODE § 33.47. The presumption should never apply and had the conduct alleged below been known to Dallas County homeowners, or had the taxing authorities been forthcoming with the Tax Court, no Dallas County tax records would have been admitted in evidence under the Tax Code presumption since at least 2017.

32. The taxing authorities created the problem through i) Lopez's admission of errors

[9] https://www.texastribune.org/2025/03/13/texas-property-tax-delinquent-fees-attorneys/

[10] *Id.*

in the records, and ii) the repeated refusal to allow a required audit of the records. In Texas, "[t]he county auditor has general oversight of the books and records of a county . . . ." TEX. LOC. GOV'T CODE § 112.006. "The county auditor shall see to the strict enforcement of the law governing county finances." Id. "The office of county auditor is highly important under [Texas's] scheme of local self-government. His selection is removed as far as possible from direct political influence by requiring his appointment at the hands of the district judges of the county." *Commissioners Court of Harris County v. Fullerton*, 596 S.W.2d 572, 576 (Tex. Civ. App. – Houston [1st Dist.] 1980, writ ref'd n.r.e.) (*citing Southern Surety Co. v. Hidalgo County*, 125 Tex. 390, 83 S.W.2d 313 (1935)). Denying the county auditor access to records is an offense and can result in removal from office of the government official denying access. TEX. LOC. GOV'T CODE § 114.003.

33. Even though the audit reports show the denial of access to the tax records, the Municipal Defendants, primarily the Dallas County Commissioner Court, which is copied on the audit reports, apparently has i) failed to require the records be audited, ii) failed to make the records available to the county auditor, and/or iii) failed to take any corrective or disciplinary action to address the audit reports, or the use of unaudited records for tax levies and tax litigation.

34. The Linebarger Firm touts Defendant ACT as having

> [E]xpertise in developing, installing, and supporting user-friendly tax collection systems that meet processing system needs and adapt easily to future technology. We are widely known as the company that offers a tax collection system with fully integrated system components that serve the complete needs of the tax office.

In addition,

> ACT has developed a system of user privileges that controls what users can do with database information. Tax offices are able to manage their own security needs. Authorized users who have access to a set of user security screens can set the level of privilege that each tax office employee can have) [sic].

35. Despite Defendant ACT's allegedly competent management of Dallas County's tax records, the Dallas County Auditor was at least twice denied access to those same Dallas County tax records, which he documented in his FY 2017[11] and 2020[12] audit reports.

36. In 2017, the Dallas County Auditor reported:

> We are unable to perform transactions tests on the entire population of Property Tax and Non-Property Tax data. Without access to the data, we are unable to perform limited testing to sample relevant data to provide a higher quality of audit evidence in the following areas: **Levy correction and adjustment made, P&I assessed, Adding, Changing or Removing Special Exemption, Payment made after Delinquency date, Delinquency Statues, Refund generated due to levy adjustment, Tasks, Entitlements and jobs assignment, Receipts sequence and Voided Receipts, Motor Vehicle Registration and Title Transaction and Dealer Filing Status**. LBGS contract Paragraph C. **Access to All County Data and Information** states that "LGBS agrees that County, or many of its duly authorized representatives, has the right of timely and unrestricted access to all records, data and information, including the most current ones available to LGBS, or under LGBS control that are pertinent to the fulfillment of the requirement of the Contract and its Amendments, in order to audit, monitor, examine, or make excerpts, transcripts and copies of such records, data and information". Paragraph D. **Audit** states that **"**The County Auditor its assigns, or any other authorized County personnel shall have the unrestricted right to audit all data or documentation related this Contract". **Because we have been unable to gain access to the unfiltered data within the ACT Databases for audit testing we could not state whether or not the data in total are accurate and accounted for. (emphasis added)**

Audit Report, Dallas County, Tax Office Audit Fiscal Year 2017 at 14 (released June 25, 2018).

Although the 2017 Audit Report covered the Dallas County Tax Office, the Auditor placed responsibility on The Linebarger Firm/ACT and the Tax Office for denying the Auditor access

---

[11] Attached as Exhibit C.

[12] Attached as Exhibit D.

to the tax records and data.

37. In fiscal year 2020, the Dallas County Auditor was similarly denied access to the county tax records. He wrote:

> We were unable to perform transactional tests on the entire population of Property Tax and Non - Property Tax data. This limits our ability to sample relevant data from the following: levy corrections and adjustments made; P&I assessed; adding, changing and removing special exemptions; payments made after the delinquency date; delinquency statuses; refunds generated due to levy adjustments; user access privileges; receipt sequence and voided receipts; Motor Vehicle Registration, Title Transaction and Dealer Filing Status. The contract with Linebarger Goggan Blair & Sampson, LLP (LGBS) states the CLIENT shall be entitled to all client data and transaction information which is used or maintained for purposes of the performance of ACT's services. We could not state whether the complete data in total is accurate and complete because we have been unable to gain access to the unfiltered data within the ACT RTS Databases for audit testing.
>
> . . .
>
> There has been dialogue with the Tax Office regarding data access over the years, but there has been no progress in obtaining the requested data. This issue has also been included in prior year audit reports since 2017.
>
> **This continued lack of transparency by Tax Office management raises specific concerns about potential instances of fraud which may occur and go undetected. (emphasis added)**

Audit Report, Dallas County, FY2020 Tax Office Annual Audit—Amended at 28-29 (released July 12, 2022).

38. In Texas statutory system, auditor has broad power over every warrant (check) written by county under Texas law, freezing him out removes the tax system from Texas statutory system of individual oversight. A Texas county officer who refuses to provide information in response to a county auditor's request commits a criminal offense under the Texas Local Government Code and is subject to a fine and removal from office.[13] The head of

---

[13] Tex. Loc Govt Code § 114.003 (2024). Penalty for Failure to Furnish County Auditor with Report; Removal. This audit noncompliance also appears to violate the newly passed legislation

the Dallas County Tax Office was in 2017, and is today John Ames, the county tax assessor – collector.

39. In the 2017 and 2020 audit reports, the Dallas County Auditor made clear that the Tax Office, Defendants The Linebarger Firm, and ACT shared blame for secreting Dallas County property, *i.e.*, Dallas County property tax records, from the County Auditor. The 2017 and 2020 audit reports also make clear that Defendant The Linebarger Firm acted contrary to, and likely breached, the contract it entered to serve the citizens of Dallas County. Both audit reports at issue show that they were copied to the Dallas County Commissioners' Court Administrator. There appears to be no public information that shows any action taken against

---

https://capitol.texas.gov/tlodocs/89R/billtext/pdf/SB01851F.pdf#navpanes=0.

Further, pursuant to Local Government Code § 115.002 "(a) The county auditor shall carefully examine and report on all reports that are about the collection of money for the county and that are required to be made to the commissioners court. (b) **At least once each quarter,** the county auditor shall check the books and s**hall examine in detail the reports of the county tax assessor-collector,** the county treasurer, and all other officers. T**he auditor shall verify the footings and the correctness of those books and reports.** The auditor shall either stamp the books and reports approved or shall note any differences, errors, or discrepancies." (emphasis added) It is clear from the failure of The Linebarger Firm, ACT and Ames to allow the auditor access to the tax records, this statute is being violated as well. Additionally, Local Government Code § 115.001 Examination of Records, requires "The county auditor shall have **continual access** to and shall examine and investigate the correctness of: (1) the books, accounts, reports, vouchers, and other records of any officer." (emphasis added) This has not happened since at least 2017.

Another statute calls into question the legality of Defendants The Linebarger Firm and ACT taking possession of the records and whether the records are being adequately preserved pursuant to state law. Government Code § 552.004 Preservation of Records requires " (a) A governmental body or, for information of an elective county office, the elected county officer, may determine a time for which information that is not currently in use will be preserved, subject to Subsection (b) and to any applicable rule or law governing the destruction and other disposition of state and local government records or public information. (b) A current or former officer or employee of a governmental body who maintains public information on a privately owned device shall: (1) forward or transfer the public information to the governmental body or a governmental body server to be preserved as provided by Subsection (a); or (2) preserve the public information in its original form in a backup or archive and on the privately owned device for the time described under Subsection (a). (c) The provisions of Chapter 441 of this code and Title 6, Local Government Code, governing the preservation, destruction, or other disposition of records or public information apply to records and public information held by a temporary custodian."

Ames, Defendant The Linebarger Firm, or Defendant ACT for the conduct described above. The municipal Defendants appear to have abdicated their prosecutorial and oversight roles.

40. After the troubling FY2020 Audit Report was released, the Dallas County Auditor's career was upended. The auditor was assigned responsibility for the county's Oracle Cloud ERP ("Enterprise Resource Planning") software implementation, which was intended to handle financial, procurement, HR, talent management, benefits administration, and payroll for the county. ERP software implementations are notoriously detailed and difficult and can only be managed by experienced IT professionals. These complex software projects often leave massive litigation in their wakes. Software implementation or ERP project management is absent from the County Auditor's statutory charge or mission statement.

41. When serious problems arose in the Oracle ERP project, the Dallas County judges, who by statute hire the county auditor, pointed the finger at the auditor, questioning his "competence," and overlooked Oracle, and the other ERP consultants and the county IT professionals involved in the troubled project. While the project was in an apparent crisis mode, the district judges persuaded Dallas County Judge Clay Jenkins[14] to hire an independent consultant to review the Oracle project. Judge Jenkins observed that it was unusual to perform an "after action" review when the project was incomplete, but he relented and authorized a taxpayer-funded $39,000 consultant review.

42. The consultant's report failed to support the district judges' challenges to the auditor's "competence." In fact, the consultant, hired at the behest of the district judges, found the opposite, and told the Dallas Morning News:

> [T]he county's IT team, the software consultant, project manager and others **"failed" auditor Darryl Thomas**, who oversees payroll. . .
> . [the] internal IT staff should have done more testing beforehand.

---

[14] Dallas County Judge Clay Jenkins is also a signatory for the municipalities on the contract with The Linebarger Firm. See Exhibit B.

> The IT team that was associated with this — not the broad IT team — should have done a lot more work on risk assessment" . . . "There's a good bit of responsibility that we rest there."

Dallas Morning News, August 15, 2023 (emphasis added).

43. The district judges were not swayed by the conclusion of the consultant, and they promptly and totally disregarded the consultant's conclusion that **everyone but** the auditor was at fault, that the other supposed professionals **"failed"** the auditor, and the district judges demanded the auditor's resignation. They got it -- the auditor was forced to resign to avoid being fired. There is no known evidence that Oracle, or the other culpable parties identified by the consultant, were ever held to account for the troubled (or largely failed) Oracle Cloud ERP implementation.

44. The end result of the Oracle fiasco, is (i) firing the auditor proved nothing, and the replacement auditor did not fix the Oracle ERP implementation himself, so (ii) the County hired another high-priced IT firm to finish the Oracle project[15], which suggests (iii) the auditor was never the problem with the Oracle ERP project (as the consultant found) and, (iv) the district judges wasted $39,000 in taxpayer money for a consultant report they ignored.

45. But, also ignored and unresolved, is the work of the dismissed county auditor from FY2017 and FY2020. Dallas County, Ames. The Linebarger Firm and ACT denied the auditor access to the county's records, an apparent criminal violation that has festered since 2017, which was overlooked while the auditor was shown the door, and based on public disclosures, the tax records have never been completely audited again. Ames, The Linebarger Firm and ACT still occupy their comfortable, and profitable, positions.

46. Dallas taxpayers are delivered collection notices and sued by The Linebarger Firm regularly based on Dallas County tax records that have not been audited since before 2017

[15] On December 5, 2023, the Dallas County Commissioners Court funded a $11,996,363 a three-year ERP Application Managed Services agreement with Accenture, LLP.

because of Ames and The Linebarger Firm, and ACT's obstruction of the Dallas County Auditor. Ames regularly uses the mails to send Plaintiffs and Class members statements tainted by the unaudited records.

## B. THE LINEBARGER FIRMS PATTERN AND PRACTICE OF UNLAWFUL ACTIVITY

47. The Plaintiffs are not asking the Federal Court to weigh in on the validity of the State Court tax litigation. This chronology is outlined is outlined below solely to explain Linebarger's conduct in the Due Process violations against the Plaintiff's and the failure of oversight of the municipal defendants throughout the years. DMLT is an example of that lack of oversight and training of Linebarger, leading to the immense harm suffered by DMLT and on information and belief numerous other citizens of Dallas County and the other municipalities serviced by Linebarger.

48. In 1994, after reaching the age of 65, the eventual Trustor filed for deferral of the taxes owed on the property with the Dallas County Appraisal District pursuant to Tex. Tax Code § 33.06.

49. In 2009, DMLT was established under the laws of Texas. On March 7, 2010, a title search was run on the property. There were no *ad valorem* tax liens on the property.

50. The Trustor passed away on January 15, 2014. At that time Trustee calculated the deferred *ad valorem* taxes due as $392,497. Another title search was run on February 3, 2014. There were no *ad valorem* tax liens on the property.

51. On February 17, 2014, Trustee for DMLT received a delinquent tax statement from Defendant The Linebarger Firm by United States mail with respect to delinquent taxes owed by DMLT. The statement outlined taxes owed from 1991-2014 totaling $743,211. The Linebarger Firm has never alleged or explained how properly deferred taxes became delinquent

in one month.

52. Plaintiff Trustee, who had run the title searches on the property, contacted Defendant The Linebarger Firm and notified them of an error in the amount due and explained that the Trust would pay the ad valorem taxes due, but the years 1991-1994 should be excluded from the calculation.

53. Instead of correcting the error, and without responding to the Trustees' correspondence, Defendant The Linebarger Firm filed suit in Case TX-14-41112 claiming taxes were owed back to 1974. Defendant The Linebarger Firm demanded taxes in of $520,909.10, with penalties and interest of totaling $1,169,748.55, with a total amount due of $1,690,657.55, misrepresenting the amount due and based upon unreliable records, and making it impossible for Trustee to secure a loan to pay the taxes. Plaintiff Trustee, who is also an attorney, responded to the lawsuit. Lopez was lead counsel for Defendant The Linebarger Firm.

54. On October 10, 2016, Trustee filed a Motion for Leave to File Partial Summary Judgment in the lawsuit. Defendant The Linebarger Firm nonsuited the matter on October 12, 2016.

55. On August 15, 2017, Trustee met with Defendant The Linebarger Firm's lead counsel, Lopez, at the Linebarger Firm's Dallas offices. In that meeting, Lopez stated that the taxing authorities' accounting records did not accurately represent taxes owed. He made clear that his clients' tax records were not entirely accurate and were "plagued" with problems. Lopez insisted he wanted to work out a fair and reasonable resolution without the need for litigation. Trustee insisted that DMLT wanted to pay the taxes owed, but should not be responsible for the ever-growing penalties, interest and fees caused by Defendants The Linebarger Firm and Lopez'

errors[16] and delays.

56. Despite multiple emails from Trustee, Trustee did not hear back from Lopez until June of 2023. Lopez again asked Trustee to come to Defendant The Linebarger Firm's office for a meeting to work out a resolution of the tax issues. At that meeting Lopez admitted that the applicable 20-year statute of limitations of the Texas Tax Code[17] required a reduction of multiple years from the calculation of taxes claimed and sued upon by Defendant The Linebarger Firm. Lopez once again indicated that he was eager to reach a fair and reasonable resolution without the need for litigation. These were fraudulent, misleading and deceptive representations.

57. After that meeting, Trustee forwarded Lopez via email the tax statement that had

---

[16] The Texas Tax Code Provides for Waiver of Penalties and Interest where they are caused by errors of agents like The Linebarger Firm.

Sec.33.011. WAIVER OF PENALTIES AND INTEREST

a. The governing body of a taxing unit:

i. **shall** waive penalties and **may provide for the waiver of interest** on a delinquent tax if an act or omission of an officer, employee, or agent of the taxing unit or the appraisal district in which the taxing unit participates caused or resulted in the taxpayer's failure to pay the tax before delinquency and if the tax is paid not later than the 21st day after the date the taxpayer knows or should know of the delinquency. (emphasis added)

[17] Tex. Tax Code Sec. 33.05. LIMITATION ON COLLECTION OF TAXES.
(a) Personal property may not be seized and a suit may not be filed:
(1) to collect a tax on personal property that has been delinquent more than four years; or
(2) to collect a tax on real property that has been delinquent more than 20 years.
(b) A tax delinquent for more than the limitation period prescribed by this section and any penalty and interest on the tax is presumed paid unless a suit to collect the tax is pending.
(c) If there is no pending litigation concerning the delinquent tax at the time of the cancellation and removal, the collector for a taxing unit shall cancel and remove from the delinquent tax roll:
(1) a tax on real property that has been delinquent for more than 20 years;
(2) a tax on personal property that has been delinquent for more than 10 years; and
(3) a tax on real property that has been delinquent for more than 10 years if the property has been owned for at least the preceding eight years by a home-rule municipality in a county with a population of more than 3.3 million.

been mailed by Defendant The Linebarger Firm in February of 2014 that was in error. Trustee once again pointed out the absence of tax liens in the title searches on the property. Trustee asked that Lopez forward an updated and corrected spreadsheet with *ad valorem* taxes owed on the property. Trustee never received such a spreadsheet.

58. On May 25, 2024, Trustee created a spreadsheet and made an offer to pay the *ad valorem* taxes back to 1995 minus a percentage noting the home is over 50 years old and Trustee was unable to challenge the property appraisal over the years because of Defendant The Linebarger Firm's delays. No response or counteroffer was received from Defendant The Linebarger Firm.

59. On December 10, 2024, Trustee was served with a one-page "'alias" summons for case # TX-22-01916 but no petition was attached. It appears that Defendant The Linebarger Firm had filed suit in 2022, before the June 2023 meeting Trustee had with Lopez, but Trustee was never told about the lawsuit nor served with the Petition. After receiving the alias summons, Trustee repeatedly called Lopez and his assistant to get a copy of the Petition. Trustee received no response.

60. Based on the one-page "alias" summons, on December 30, 2024, Trustee made another offer to pay the taxes listed on that summons (exclusive of penalties, interest, fees and costs) in an email to Lopez. No response was received from Lopez.

61. Trustee could not find the Petition online so went to the Dallas County courthouse records office on January 2, 2025. The records office found the unserved Petition from 2022. Trustee filed an answer that day containing a general denial and listing multiple affirmative defenses.

62. Trustee found that the Petition had been filed on December 8, 2022, before the Trustee's last meeting with Lopez. Lopez had fraudulently concealed the existence of any litigation

during that meeting. The Petition in TX-22-01916 demanded taxes from 2002-2022 with taxes of $647,599.54, penalties and interest of $983,664.38, totaling $1,631,263.92, once again, misrepresenting the amount due and based upon unreliable records.

63. The Petition in TX-22-01916, noted yet another secret, unserved lawsuit that had been filed in 2020, Case TX-20-00820. These cases had both been filed yet unserved while Lopez was meeting with Trustee and assuring her that litigation was unnecessary and that a fair and reasonable settlement offer was forthcoming. When TX-20-00820 was found by the Trustee in the Dallas County records, that Petition demanded $576,797.35 taxes plus $845,556.91 in penalties and interest for a total of $1,422,033.99 for years 2000-2019, misrepresenting the amount due and based upon unreliable records.

64. There were many other misrepresentations found filed in the record of Case TX-20-00820. For example, when requesting Motions for Continuance with the Court, Lopez falsely claimed on March 3, 2021, and July 21, 2021, that he was not seeking the continuances in order to delay but was seeking a waiver of citation from Trustee, which was never sought. The record also shows that he was making attempts to serve Trustee at a variety of addresses, including one in **New Jersey**, when he knew her phone number, email address, and that she lived at the property which is the subject of the suit.

65. On January 8, 2025, six days after filing the answer in TX-22-01916, Trustee received a Motion for Summary Judgment from Defendant The Linebarger Firm this time alleging taxes due back to 1974 in the amount of $3,505,848.90, in excess of the appraised value of the property. Once again, misrepresenting the amount due and based upon unreliable records. Reviewing the Court Record, Trustee found Defendants The Linebarger Firm and Lopez filed a First Amended Petition on November 23, 2023, for taxes from 2002-2022 including taxes of

$711,310.22 and penalties and interest of $1,098,709.28 for a total of $1,810,019.50. Once again, misrepresenting the amount due and based upon unreliable records.

66. To the extent Lopez's August 2017 statement could be notice, it was not — and reasonably could not have been enough to put Plaintiffs on notice of a pattern of racketeering activity. Notice was negated by Linebarger's conduct. Lopez said in the August 2017 meeting that he would provide a spreadsheet in an ongoing process to address discrepancies; a follow up email in December 2018 asked for the promised spreadsheet, which Lopez never provided and never answered. In September 2020, Linebarger filed suit without disclosing the suit to Plaintiff Trustee — concealment that continued for more than four years. Plaintiff Trustee first learned of that suit's existence in December 2024. Plaintiffs were diligent, as shown by the December 2018 follow-up, and had no basis to suspect Lopez's representations were false, or that records had been denied the auditor until March 2025.

67. On January 31, 2025, Trustee once again ran a title search on the property. This time the information provided by Defendant The Linebarger Firm to the title company showed a total of $3,559,625 in taxes due from 1974-2025, yet showed a judgment in another case, apparently covering the periods 1974-1991, Cause No. TX-86-30635, as **paid.** This title report, in light of the previous title reports obtained by the Trustee clearly evidences Linebarger and ACTs failure to maintain the abstracts of the 1989 and 1994 judgments, as contractually required, and absolute inability to keep accurate records.

68. On February 17, 2025, another First Amended Petition was filed by Defendant The Linebarger Firm, this time alleging taxes due from 1994-2025 of $959,336.69, penalties and interest of $1,306,998.43, and fees of $428,047.54, totaling $2,694,382.66. Despite being advised repeatedly of the errors in calculation, and The Linebarger Firm’s own admission of the

unreliability of the records and The Linebarger Firm's obstruction of any audit of the records, Defendants sued once again, misrepresenting the amount due and based upon unreliable records.

69. As Harris County discovered, since February of 2014, Defendant The Linebarger Firm has been acting in bad faith, repeatedly misrepresenting the amount owed and intentionally delaying resolution of this matter in an attempt to increase the penalties and fees owed on the property and making fraudulent, misleading, deceptive, and deliberate misrepresentations to courts and the Trustee. Defendants' motive in the delay of any resolution of the tax issue has been and continues to be an attempt to increase the amount due in penalties and interest over the value of the property, while at the same time fraudulently increasing the fees Defendant The Linebarger Firm claims to be entitled.

70. The Defendants' outrageous and predatory conduct has caused great injury--financial loss and extreme emotional distress to the Plaintiffs. Through the 12-year resistance to resolving the dispute, the Defendants constructively seized the Trust's property by controlling the property in a manner that meaningfully interfered with the Plaintiffs' right to possess the property and deprived Plaintiffs of the ability to use or transfer property. The Trustee has been forced into a state of limbo for 12 years: not able to get a mortgage; not able to sell the home even when receiving bona fide offers; not being able to make rational economic decisions about upkeep and repair on a 50-year-old home; not being able to make employment decisions; not being able to decide whether or not to stay in a neighborhood where the property taxes have doubled; and the constant fear of losing her family home. This 12-year delay and the misrepresentations by Defendants The Linebarger Firm and Lopez regarding the character, extent, and amount of the debt has caused the Trustee and beneficiary to suffer extreme emotional distress and financial loss. Upon information and belief, this predatory, outrageous,

and harmful conduct has injured the Class Members, as well.

### C. IGNORING THE HARRIS COUNTY STUDY

71. On December 17, 2024, the Dallas County Commissioners Court renewed the contract (Court Order 2020-0098) through January 21, 2028, at "original terms" and with "No cost consideration," without legal review of the ACT software component, and the County's own briefing states "LEGAL IMPACT: N/A."

72. The Commissioners' December 2024 briefing states that Linebarger" has successfully collected over $27 million annually for Dallas Countywide entities and an additional $55 million annually for entities collected by the Dallas County Tax Office" — a combined $82 million, up from roughly $60 million the County disclosed four years earlier — and the Firm's tax collection included mailing over 140,000 collection letters per year, handling over 1,200 and over 500 properties for Sheriff's Sale annually.

73. In 2020, Harris County's calculated that its taxpayers were paying $8.6–9.3 million per year, over and above statutory interest and penalties to Linebarger under a percentage-of-penalty fee arrangement, and determined that private collection firms have **"an incentive to delay resolution to collect higher penalties."**

74. Harris County acted and transitioned some county delinquent tax collection to the County Attorney's Office and reported saving taxpayers roughly $8.8 million in fees.

75. Dallas County renewed the Linebarger contract in December 2024 but no public record shows Dallas County analyzed costs in the way Harris County had.

76. Plaintiffs, and the proposed Class, were injured directly by the totality of this situation: they received, through the mail, delinquent property tax statements, created from the ACT/Linebarger data processing system, and sent from John Ames, Dallas County Tax Assessor-

Collector, charging exact amounts, when those amounts could not be verified, established by Edward Lopez's admission to Plaintiff's Trustee and the Auditor's reports for 2017 and 2020. Dallas County and the municipal defendant's have ignored what Harris County discovered, Linebarger gets paid for delay costing citizens ever increasing and unnecessary fees and cost.

## D. THE LINEBARGER FIRM IS NOT ENTITLED TO ATTORNEY IMMUNITY

77. The Linebarger Firm's conduct that The Trust makes the subject of this Complaint is not qualified for the protection of attorney immunity under Texas law. The Texas Supreme Court makes clear that immunity is reserved for those acts that "require[] the office, professional training, skill, and authority of an attorney . . . ." *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 75 (Tex. 2021). Conduct that is foreign to the office of attorney is not protected by attorney immunity in Texas.

78. So, for example, carrying on a data processing business Defendant ACT is a commercial endeavor and not the practice of law. Teaming with a client to prevent a statutory audit and abet a violation of a criminal statute is not the work of a lawyer. Charging fees that on their face violate statutory maximums is unlawful, unethical, and not within the skill and authority of an attorney. Refusing to honor a foreclosure exemption provided by the Texas Legislature to Texans over 65 *without proof* (and directing others to do the same) is not conduct within the office of attorney. This list of wrongful acts is not exhaustive, as the details of the Complaint establish.

79. Another, perhaps simpler way of showing that the Linebarger Firm's actions are not protected is to ask whether the taxing entities *could have* contracted with the Linebarger Firm to engage in unlawful conduct. Clearly, a contract for legal services that truthfully stated exactly what the Linebarger Firm intended to do – *i.e.*, engage in the unlawful acts set forth in this Complaint – could not have been approved by the Municipal Defendants.

80. The numerous articles, public lawsuits and criminal charges, many of which can be found by a simple Google search, should have put the Municipal Defendants on notice that Defendant The Linebarger Firm had ethical challenges and needed to be extensively trained on interacting with citizens, and closely supervised. This, however, is not the case.

81. During the course of initial discovery in the 2022 tax case, in January 2025, Trustee asked Defendants The Linebarger Firm and Lopez to provide: "All Documents related to any conversation or communication between or among Plaintiffs [the municipalities in this matter] and any other individual or individuals concerning the subject property during the relevant time period.[1974-2025] **Response**: There are none." If true, this shows a shocking lack of oversight by the municipal Defendants and Ames in particular into Defendants The Linebarger Firm and Edward Lopez's outrageous activities. Dallas County's contract with Defendant Linebarger appears intended to achieve this result as it contains no reporting requirements or supervisory controls.

## E. FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS

82. The enterprise is an association-in-fact consisting of Linebarger Goggan Blair & Sampson, LLP; Appraisal and Collection Technologies LLC; and Dallas County, acting through its Tax Office. The enterprise-in-fact and has sufficient longevity, common purpose, and internal relationships to satisfy *Boyle v. United States*, 556 U.S. 938 (2009).

83. The pattern of racketeering activity alleged in this complaint and the predicate acts of racketeering, include mail fraud 18 U.S.C. § 1341, and wire fraud 18 U.S.C. § 1343. The federal mail fraud statute prohibits the use of the U.S. Mail, or any private or commercial interstate carrier, as part of a scheme to defraud someone of money or property. The federal wire fraud statute prohibits the use of electronic communications, such as telecommunications or the internet, to

intentionally deceive and defraud someone of money, property or honest services. The Plaintiff's and members of the class have been injured by reason of the RICO activity of the Defendants.

84. Beginning no later than 2017 and continuing to the present, Linebarger, in the performance of that contractual duty, caused to be mailed and wired, on a recurring basis — including, per the County's own December 2024 briefing, over 140,000 collection letters per year for Dallas County alone — Delinquent Real Property Tax Statements to Plaintiffs and Class members representing specific dollar amounts as due and owing, each such mailing or wire transmission constituting a discrete predicate act, at times when Linebarger knew, based on the Firm's own internal admissions and the County Auditor's own reports, that the underlying records could not be verified as accurate. This predicate is limited to pre-suit demand letters and routine, non-litigation account correspondence; it does not include, and Plaintiffs do not rely upon, any petition, amended petition, motion, or other filing made in a judicial proceeding. This predicate alone, given the volume and multi-year recurrence of these mailings, satisfies the "two or more predicate acts" pattern requirement of 18 U.S.C. § 1961(5). Plaintiffs received yearly mailings from the Tax Assessor Collectors Office since 2017 with the unaudited tax figures included. Plaintiffs did not become aware of the obstruction of the County Auditor until March of 2025.

85. Parallel wire-fraud basis. The same conduct described in predicate is independently actionable as wire fraud under 18 U.S.C. § 1343 to the extent effectuated by interstate wire rather than the mails: the governing contract requires the County to pay Linebarger's compensation "by wire transfer," Article 3.02 (2001 Contract); Article XII (2020 Contract), a recurring wire transmission carrying the direct financial benefit of the scheme with each disbursement; and ACT's data-processing system itself operates through an interstate architecture — its Primary System is hosted in San Antonio, Texas, with a separate disaster-recovery site, and every delinquent-tax

record, disbursement calculation, and statement generated for Dallas County property owners is produced through that infrastructure before any mailing occurs.

86. Defendants have engaged in a pattern of racketeering activity involving the Plaintiffs and Class members continuing over a period of more than 10 years and there is a threat of continued activity under 18 U.S.C. § 1961(5). The acts are related and have the same or similar purposes, results, participants, victims, methods of commission. As a nationwide collection firm, Linebarger has "directly engaged in the production, distribution, or acquisition of goods and services in interstate commerce." Additionally, its website brokers properties seized nationwide.[18] Linebarger uses the mails and wires as instrumentalities of interstate commerce in their collection activities. As outlined below, the Plaintiffs and Class members have sustained injury to their property by reason of Defendant's violations of 18 U.S.C. § 1962, and the mail and wire fraud perpetrated by the Defendants, The Plaintiffs' and class members' injuries stemmed from these predicate acts under 18 U.S.C. § 1962(c) and (d).

87. Defendants Linebarger and ACT are each "persons" under 18 U.S.C. § 1961(3) distinct from the enterprise described above, each of which conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through the pattern of racketeering activity described below, within the meaning of *Reves v. Ernst & Young*, 507 U.S. 170 (1993). A corporate entity may itself be a RICO "person" distinct from an enterprise that includes it, *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), and Linebarger's and ACT's liability rests on the conduct of their own partners, officers, and employees acting within the scope of their roles and

[18] Defendant Linebarger's listing of properties for sale: https://taxsales.lgbs.com/map?lat=39.576604&lon=-96.721782&zoom=4&offset=0&ordering=precinct,sale_nbr,uid&sale_type=SALE,RESALE,STRUCK%20OFF,FUTURE%20SALE&in_bbox=-137.239360125,15.882775955860405,-56.204203875,57.28239597562871,

for the entities' benefit. This includes Edward Lopez's role in the execution of the contract, and his admissions regarding record unreliability. No individual is named as a RICO person or as a defendant in in this matter.

88. Dallas County's mailing conduct, undertaken through Ames and its Tax Office and attributed to the enterprise for purposes of describing the scheme's operation, does not render Dallas County or any other Municipal Defendant a RICO "person" or defendant in these Counts: a governmental entity is not a proper civil RICO defendant, because it cannot form the requisite intent and because RICO's mandatory treble-damages remedy is punitive in character and would fall on the taxpaying public rather than any culpable actor. *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 412 (5th Cir. 2015); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3d Cir. 1991).

89. The predicate acts described above extend over a period of at least nine years (2017–present), affect not only the named Plaintiffs but, through the interlocal collection arrangement, taxpayers across 87 of the 90 distinct taxing entities served by the Dallas County Tax Office, and present a continuing threat of repetition absent judicial intervention, satisfying both closed-ended and open-ended continuity under *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989).

90. Plaintiffs' injuries flow directly from the predicate acts described above: the failure to allow and obstruction of the audit; that avoided scrutiny directly enabled the continued generation of unverified records; those unverified records were the direct basis for the mailed statements which Plaintiffs and Class members received and relied upon to their detriment, including by paying amounts and incurring litigation exposure based on those unverified figures. Under *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), Plaintiffs' own first-party

reliance on the predicate mailings is not required to establish proximate cause; it is sufficient that Plaintiffs' injury flows directly from the scheme, as pled here.

91. Linebarger Firm uses the mails and wires as instrumentalities of interstate commerce in their collection activities. As outlined below, the Plaintiffs and Class members have sustained injury to their property by reason of Defendant's violations of 18 U.S.C. § 1962, the mail and wire fraud perpetrated by the Defendants, . The Plaintiffs' and class members' injuries stemmed from these predicate acts under 18 U.S.C. § 1962(c) and (d).

92. This common course of unlawful conduct has injured thousands of Texas individuals in violation the Texas law and, standing alone, warrants the certification under Rules 23(b)(3) of the Federal Rules of Civil Procedure as more fully described in of this Class Action Complaint.

## V.
## CLASS ACTION ALLEGATIONS

93. The named Plaintiffs bring this action as a Class Action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure, and pursuant Rule 23(b)(3) is defined as follows:

**CLASS ONE:**

From at least 2017 to the present, Plaintiffs, and all similarly situated persons and entities, against whom the Municipal Defendants sought to enforce, by suit or otherwise, the collection of allegedly delinquent *ad valorem* taxes, together with all penalties, interest, fees and costs.

Excluded from the Class are the named Defendants, their agents, affiliates, and employees, the Judge assigned to this matter and his or her staff.

**CLASS TWO:**

From at least 2017 to the present, Plaintiffs, and all similarly situated persons and entities, to whom Defendant sent or caused to be sent a Real Property Tax Statement, electronically through the use of the wires or by United States mail, that included tax amounts based on records that were withheld or denied to the Dallas County Auditor.

Excluded from the Class are the named Defendants, their agents, affiliates, and employees, the

Judge assigned to this matter and his or her staff.[19]

94. **Numerosity.** The requirements of Rule 23(a)(1) are satisfied in that there are too many Class Members for joinder of all of them to be practicable. Upon information and belief, these Class Members for Class One exceed over 1,000 in number. These Classes, as defined above, meet the numerosity requirement. Upon information and belief, the Class Members for Class Two include all residential property owners in Dallas County, Texas. There were an estimated 971,690 households as of 2020.[20]

95. **Commonality.** The claims of the Class Members in Class One and Two raise numerous common issues of fact and/or law, thereby satisfying the requirements of Rule 23(a)(2). These common legal and factual questions, which may be determined without the necessity of resolving individualized factual disputes concerning any Class Member, include, but are not limited to, the following questions:

**Question of Fact- CLASS ONE**

- Whether the Class Members Received Notices of Lawsuit and Delinquent Real Property Tax Statements?

**Questions of Law CLASS ONE**

- Whether The Linebarger Firm's legal and/or debt collection services to enforce, by suit or otherwise, the collection of allegedly delinquent *ad valorem* taxes, together with all penalties,

---

[19] It is likely, given the nationwide reach of The Linebarger Firm, the class will expand to a "nationwide" class. There are doubtless many property owners who do not reside in Dallas County or in Texas. As a Dallas County taxpayer, Mr. Gleboff, attorney for the Plaintiffs, will exclude himself from the Class.

[20] https://data.census.gov/table?q=Dallas%20County,%20Texas%20p16&y=2020

interest, fees and costs included an unlawful or excessive amount?

- Whether The Linebarger Firm's legal and/or debt collection services to enforce, by suit or otherwise, the collection of allegedly delinquent *ad valorem* taxes, violated the legal and/or Constitutional Rights of the property owner?

**<u>Questions of Fact- CLASS TWO</u>**

- Whether Real Property Tax Statements were sent to the Class Members electronically through the use of the wires or by United States mail?

**<u>Questions of Law – CLASS TWO</u>**

- Whether Real Property Tax Statements included tax amounts based on records that were unaudited by the Dallas County Auditor?

96. **<u>Typicality</u>**. The claim of the named Plaintiffs is typical of the unnamed Class Members because they have a common source and rest upon the same legal and remedial theories, thereby satisfying the requirements of Rule 23(a)(3). For example, the named Plaintiff's claims are typical of the claims of the Class because Plaintiffs and all Class Members were injured or damaged by the same wrongful practices in which Defendants engaged, namely the utilization of unaudited amounts or charging and collecting unlawful attorney's fees which are prohibited under Texas law.

97. **<u>Adequacy of Representation.</u>** The requirements of Rule 23(a)(4) are satisfied in that the named Plaintiff has a sufficient stake in the litigation to vigorously prosecute their claims on behalf of the Class Members and the named Plaintiff's interests are aligned with those of the proposed Class. There are no defenses of a unique nature that may be asserted against Plaintiffs individually, as distinguished from the other members of the Class, and the relief sought is

common to the Classes. Plaintiffs do not have any interest that is in conflict with or is antagonistic to the interests of the members of the Classes and has no conflict with any other member of the Classes. Plaintiffs have retained competent counsel experienced in class action litigation, including consumer and financial services class actions, to represent the Class Members in this litigation. To wit, Plaintiff's chosen counsel – Stephen Gleboff, PLLC – has successfully handled class action cases, including on behalf of IBM, a Fortune 50 U.S. corporation.

98. **Predominance and Superiority.** All of the requirements for Rule 23(b)(3) are satisfied because the common factual and legal issues identified above are sufficiently cohesive to warrant adjudication by representation. In particular, the Plaintiffs and the Class Members have suffered a common cause of injury, namely the imposition of unlawful attorney's fees included in their delinquent real property tax Notices, in excess of Texas law. The Class Members' legal claims arise exclusively under Texas law and, therefore, do not involve the application of other states' laws which may have varying degrees of liability and proof. Class action treatment is also superior to other available methods for the fair and efficient adjudication of this controversy, because individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable. The likelihood of individual Class Members prosecuting separate claims is remote and, even if every Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation in such cases. Additionally, individual litigation would also present the potential for varying, inconsistent or contradictory judgments while magnifying the delay and expense to all parties and to the court system, thus resulting in multiple trials of the same legal issue and creating the possibility of repetitious litigation. As a result, the desirability to concentrate litigation in this forum is significantly present. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its

maintenance of a class action. Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Classes would be proper.

## VI. CAUSES OF ACTION

### COUNT I
### RICO, 18 U.S.C. § 1962(c)
### (Against Linebarger and ACT)

99. The allegations of this Complaint are incorporated herein by reference as if fully set forth in this Count.

100. The enterprise is an association-in-fact consisting of Linebarger Goggan Blair & Sampson, LLP; Appraisal and Collection Technologies LLC; and Dallas County, acting through its Tax Office. It's activities affect interstate commerce.

101. Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of mail fraud 18 U.S.C. § 1341, and wire fraud 18 U.S.C. § 1343. The federal mail fraud statute prohibits the use of the U.S. Mail, or any private or commercial interstate carrier, as part of a scheme to defraud someone of money or property. The federal wire fraud statute prohibits the use of electronic communications, such as telecommunications or the internet, to intentionally deceive and defraud someone of money, property or honest services.

102. The acts of mail fraud 18 U.S.C. § 1341 and wire fraud 18 U.S.C. § 1343, set forth above, through the use of unaudited tax records to collect *ad valorem* taxes, constitutes a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

103. As a direct and proximate result of the racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs and Class Members have been injured in their business and property in that; the use of the mails and wires to commit fraud upon the Plaintiffs and class members; the use of fraudulent and unaudited records to collect *ad valorem* taxes; and depriving the Plaintiffs

and Class Members of their Constitutional rights.

104. Defendants' behavior harmed the Plaintiffs and Class Members including payment of amounts, and exposure to litigation and property loss, based on records and representations Defendants knew or recklessly disregarded were unverified and unreliable.

105. Plaintiffs and the Class are entitled to treble damages, costs, and attorneys' fees under 18 U.S.C. § 1964(c).

**COUNT II**
**RICO 18 U.S.C. § 1962(d)**
**(Linebarger and ACT)**

106. The allegations of the Complaint are incorporated herein by reference as if fully set forth in this Count.

107. As set forth above, the Defendants agreed and conspired to violate 18 U.S.C. § 1962 (c). Specifically: they committed multiple related acts of mail fraud 18 U.S.C. § 1341 and wire fraud 18 U.S.C. § 1343, set forth above, as well as the use of fraudulent, unaudited tax records to collect *ad valorem* taxes conducting and participating in the conduct of the affairs of the enterprise through a pattern of racketeering activity 18 U.S.C. § 1962(c).

108. The Defendant's acting through their respective partners, officers, and employees, agreed with one another to conduct and participate in the conduct of the enterprise's affairs through the pattern of racketeering activity described above and each knew of, and agreed to facilitate, the overall scheme even if each did not know all of its specific details, in violation of 18 U.S.C. § 1962(d).

109. The Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity,

and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. The Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962 (c) in violation of 18 U.S.C. § 1962(d).

110. As direct and proximate result of the Defendants conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have been injured in their business and property in that: Defendant's used the mails and wires to commit fraud upon the Plaintiffs and class members; used fraudulent and unaudited records to collect *ad valorem* taxes and deprived the Plaintiffs of their Constitutional rights.

111. Defendants' behavior harmed the Plaintiffs and Class members including payment of amounts, and exposure to litigation and property loss, based on records and representations Defendants knew or recklessly disregarded were unverified and unreliable.

112. Plaintiffs and the Class are entitled to treble damages, costs, and attorneys' fees.

**COUNT III**
**42 U.S.C. § 1983, Due Process**
**(Against the Municipal Defendants, on a Monell theory)**

113, The allegations of the Complaint are incorporated herein by reference as if fully set forth in this Count.

114. The acts of the Defendants and their agents deprived the Plaintiffs of their rights as provided under the United States Constitution;

115. The Municipal Defendants, through the Dallas County Tax Office, deprived Plaintiffs and the Class of property without due process of law by continuing to generate, mail, and collect upon delinquent tax statements based on records the Municipal Defendants' own

independent Auditor had, since 2017, identified as unverifiable and potentially fraudulent, without ever implementing any corrective audit or alternative verification mechanism.

116. Monell policy. The Dallas County Commissioners Court, the relevant policymaking body, formally adopted and repeatedly renewed (including in December 2024) an official policy of exclusive reliance on the ACT/Linebarger records system for delinquent tax collection across all 87 taxing entities served under the interlocal collection agreements, continuing that policy after receiving actual notice of the FY2017 and FY2020 Auditor findings, and with actual or constructive knowledge, as of the December 2024 renewal, that a comparable Texas county had already identified and implemented a materially cheaper, adequately verified alternative. This is a discrete, identified policymaker-level decision, not a diffuse custom inferred from isolated incidents, satisfying *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and *Connick v. Thompson*, 563 U.S. 51 (2011).

117. That policy of exclusive, unverified reliance is further evidenced by the Municipal Defendants' knowing tolerance of Linebarger's own failure to maintain the abstracts of the 1989 and 1994 judgments sought to be executed against Plaintiff DMLT described above. The Municipal Defendants have a live contractual indemnity claim against Linebarger for precisely this conduct and, on information and belief, have never invoked it, notwithstanding actual knowledge of the facts giving rise to it — the same pattern of institutional non-enforcement that produced the Auditor's unaddressed findings.

118. That policy is also evidenced by the actions of Linebarger in the DMLT matter. Repeatedly delay’s and silence followed by occasional meetings where the Trustee received misrepresentations and was mislead about the status of the litigation leading up to the December 2024 service of a lawsuit that had been pending for years. Any type of oversight by the Municipal

Defendant's would have and should have prevented the treatment DMLT has received in this matter and prevented the continuing due process violations the Trustee suffered for more than 12 years.

119. More generally, the Municipal Defendants were, or should have been, on notice of all of Linebarger's alleged unethical, illegal and improper collection practices throughout the United States. Linebarger's broad contractual indemnification of the Municipal Defendants — covering claims, costs, and liabilities arising from Linebarger's own negligent acts, errors, or omissions, Art. XXIV (2005 Amendment) — insulated the Commissioners Court from the financial consequences of exactly the kind of misconduct alleged in this Complaint, removing any institutional incentive to independently verify or supervise Linebarger's and ACT's conduct rather than simply relying on that indemnity as a substitute for oversight.

120. As a direct and proximate result of this policy, Plaintiffs and Class members have been deprived of property — through liens, penalties, and litigation exposure based on unverified records — without due process of law.

121. Deprivation of alienability and use. The same policy described above has separately and independently deprived Plaintiffs of a distinct property interest: the ordinary incidents of ownership, including the rights to sell, encumber, and improve the property. For more than a decade, for example, DMLT's property's unresolved, decades-old judgment and lien history — a title cloud generated and perpetuated by the Municipal Defendants' own recordkeeping failures described above — has left the Plaintiffs property functionally unmarketable and unencumberable. DMLT's Trustee has been unable to sell the property despite bona fide purchase interest, unable to obtain mortgage financing, and unable to make ordinary maintenance and improvement decisions, because no reasonably diligent buyer, lender, or title insurer could ascertain the property's true title

status. This deprivation traces directly to the same Monell policy outlined above. Had the Municipal Defendants implemented any corrective audit or independent verification mechanism after the FY2017 Auditor findings, the title cloud could have been resolved years ago. Further, had the Municipal Defendant's exercised supervision or oversight over Linebarger's activities, this behavior would not and should not have continued. The Municipal Defendants have never provided Plaintiffs any administrative or other process by which to obtain a definitive resolution or clearance of this cloud, leaving Plaintiffs' property in this condition for over a decade without any hearing, review, corrective mechanism — a deprivation of property without due process independent of, and in addition to, the deprivation alleged above.

122. Municipal Defendants' failure to adopt clear policies and failure to properly train and supervise Linebarger and ACT, was a direct and proximate cause of the constitutional deprivations suffered by Plaintiffs and Class Members.

**COUNT 4**
**Unjust Enrichment**
**Money Had and Received**
***(Against the Municipal Defendants)***

123. The allegations of the Complaint are incorporated herein by reference as if fully set forth in this Count.

124. Each Municipal Defendant receives a share of amounts collected by the Dallas County Tax Office under the interlocal collection arrangement described above, including amounts attributable to penalties, interest, and fees generated from the unverified, unaudited records described herein.

125. Plaintiff Giles Family Living Trust is a property-tax-paying resident of the City of Dallas has paid taxes to the municipal Defendants.

126. Plaintiffs do not challenge, and this Count does not seek recovery of, any properly assessed underlying ad valorem tax. This Count is limited to the portion of amounts paid from records denied to the County Auditor, which each Municipal Defendant received and retained.

127. Each Municipal Defendant has been unjustly enriched by receipt and retention of this benefit, obtained through the Municipal Defendants' tolerance of an unaudited, unverified collection system after the FY2017 and FY2020 Auditor findings, and it would be against equity and good conscience for each Municipal Defendant to retain such amounts.

128. In the alternative, each Municipal Defendant holds money which in equity and good conscience belongs to Giles Family Living Trust and the members of the Class, and Plaintiffs are entitled to recovery for money had and received.

**PRAYER FOR RELIEF**

WHEREFORE, the named Plaintiff and the Class Members demand judgment against Defendants on each Count of the Complaint and pray for the following relief:

1. Issue process and service on the Defendants, if not waived.
2. Issue an Order certifying that this action may be maintained as a class action, appointing Plaintiffs and their counsel to represent the Class, and directing that reasonable notice of this action be given by Defendant to all Class Members.
3. Grant any reasonable request to amend Plaintiff's Class Action Complaint to conform to the discovery and evidence obtained in this Class Action.
4. Empanel a jury to try this matter.
5. Award Plaintiff Trustee and each plaintiff Class Member compensatory damages who has suffered same.
6. Award appropriate damages and/or trebled damages pursuant to Federal and Texas law, whichever is determined to be higher by the trier of fact against the

Defendant for the willful and malicious violation of the Plaintiffs and Class Members Constitutional rights.

7. Award costs and expenses incurred in this action to Plaintiff pursuant to Rule 54 of the Federal Rules of Civil Procedure.

8. Grant the Plaintiffs and Class Members their reasonable attorney's fees and costs incurred in this litigation.

9. Award pre-and post-judgment interest in the amount of 10% per annum according to the proof at trial.

Respectfully submitted,

/s/ Stephen G. Gleboff
Stephen G. Gleboff
Stephen G. Gleboff PLLC
6126 Highgate Lane
Dallas, TX 75214
Texas Bar No. 08024500
214.802.5869
gleboffs@gmail.com
**ATTORNEY FOR THE PLAINTIFFS AND PROPOSED CLASS**

/s/ Joan E. Marshall
Joan E. Marshall
Joan E, Marshall PLLC
Texas Bar No. 13028480
4347 N.W. Hwy, Suite 130, 220
Dallas, Texas 75220
(214) 536-1169
pachos@sbcglobal.net
**TRUSTEE AND ATTORNEY FOR THE PLAINTIFFS AND PROPOSED CLASS**