**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DOROTHY MARSHALL LIVING TRUST, et al. on behalf of itself and all similarly situated persons and entities,** | § | |
| ***Plaintiffs*,** | § | **CIVIL ACTION NO. 3:26-cv-010803** |
| **v.** | § | |
| **LINEBARGER GOGGAN BLAIR & SAMPSON, LLP, a Texas limited liability partnership, et al.,** | § | |
| ***Defendants*.** | § | |

---

**MUNICIPAL DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND SUPPORTING MEMORANDUM**

---

**TROUTMAN PEPPER LOCKE LLP**
Robert T. Mowrey
State Bar No. 14607500
rob.mowrey@troutman.com
Roger B. Cowie
State Bar No. 00783886
roger.cowie@troutman.com
Kaci M. Jones
State Bar No. 24136933
kaci.jones@troutman.com
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
T: (214) 740-8000
F: (214) 740-8800

*Counsel for Defendants Dallas County, Dallas County Hospital District (improperly named Parkland Hospital District), Dallas College, Dallas County School Equalization Fund, Dallas Independent School District, and the City of Dallas.*

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....1

II. BACKGROUND ....2

III. ARGUMENT & AUTHORITIES ....4

A. All of Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction. ....4

1. The TIA and its underlying principle of comity divest this Court of subject matter jurisdiction. ....5

2. Plaintiffs' unjust enrichment/money had and received claim (count IV) is independently barred by governmental immunity. ....9

B. Plaintiffs' claims against the Municipal Defendants (counts III and IV) should be independently dismissed for failure to state a claim. ....11

1. Plaintiffs have failed to state a Section 1983 claim against the Municipal Defendants. ....12

a. Plaintiffs fail to allege a cognizable deprivation of a constitutional right. ....12

b. Plaintiffs fail to adequately plead a *Monell* theory of liability. ....14

2. Plaintiffs have failed to state a claim for unjust enrichment/money had and received against the Municipal Defendants. ....16

3. Counts III and IV are also barred by the two-year statute of limitations. ....18

C. Plaintiffs' claims independently fail for multiple additional reasons. ....19

IV. CONCLUSION ....21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amoco Prod. Co. v. Smith*,
946 S.W.2d 162 (Tex. App.—El Paso 1997, no writ) ....................10

*ANR Pipeline Co. v. La. Tax Comm'n*,
646 F.3d 940 (5th Cir. 2011) ....................6, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................11, 12, 17

*Bd. of the Cnty. Comm'rs v. Brown*,
520 U.S. 397 (1997)....................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................12, 17

*City of Conroe v. San Jacinto River Auth.*,
602 S.W.3d 444 (Tex. 2020)....................9

*City of Houston v. Corrales*,
713 S.W.3d 427 (Tex. App. 2025)....................9

*City of Houston v. Standard-Triumph Motor Co.*,
347 F.2d 194 (5th Cir. 1965) ....................8

*Connick v. Thompson*,
563 U.S. 51 (2011)....................15

*Cornish v. Corr. Servs. Corp.*,
402 F.3d 545 (5th Cir. 2005) ....................13

*County of Dallas, et al. v. Frank W. Marshall, et al.*,
No. TX-86-30635....................1

*County of Dallas, et al. v. Frank W Marshall, et al.*,
No. TX-94-30164....................1

*Dallas, Co. et al., v. Dorothy Marshall Living Trust*,
No. TX-22-01916....................1

*Dillon v. Mississippi*,
376 F. App'x 421 (5th Cir. 2010) (per curiam) ....................6

*Elledge v. Friberg-Cooper Water Supply Corp.*,
240 S.W.3d 869 (Tex. 2007) (per curiam)....................18

*Fair Assessment in Real Estate Ass'n v. McNary*,
454 U.S. 100 (1981)....................5

*Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*,
493 U.S. 331 (1990)....................5

*Gomez v. Galman*,
18 F.4th 769 (5th Cir. 2021) ....................14

*Goss v. City of Houston*,
391 S.W.3d 168 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ....................10

*Hayes v. City of Dallas*,
No. 23-CV-2271, 2025 WL 1211268 (N.D. Tex. Apr. 25, 2025) ....................12

*Hudson v. Palmer*,
468 U.S. 517 (1984)....................14

*Hutchings v. County of Llano*,
No. 20-50885, 2022 WL 3716483 (5th Cir. Aug. 29, 2022) ....................8

*Jones v. Alcoa, Inc.*,
339 F.3d 359 (5th Cir. 2003) ....................18

*Levin v. Commerce Energy, Inc.*,
560 U.S. 413 ....................5, 7

*Liggins v. Duncanville*,
52 F.4th 953 (5th Cir. 2022) ....................15

*Martinez v. Nueces County*,
71 F.4th 385 (5th Cir. 2023) ....................14

*Mathews v. Eldridge*,
424 U.S. 319 (1976)....................13

*McQueen v. Bullock*,
907 F.2d 1544 (5th Cir. 1990) ....................8

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978)....................12, 14, 15

*National Private Truck Council, Inc. v. Oklahoma Tax Commission*,
515 U.S. 582 (1995)....................7

*Nivens v. City of League City*,
245 S.W.3d 470 (Tex. App. 2007)....11

*Olaoye v. Wells Fargo Bank, N.A.*,
No. 4:11-CV-772-Y, 2012 WL 1082307 (N.D. Tex. Apr. 2, 2012)....12

*Owens v. Okure*,
488 U.S. 235 (1989)....18

*Parratt v. Taylor*,
451 U.S. 527 (1981)....14

*Paterson v. Weinberger*,
644 F.2d 521 (5th Cir. 1981)....4

*Payne v. Wells Fargo Bank, N.A.*,
No. 3:12-CV-5219, 2015 WL 1402321 (N.D. Tex. Mar. 26, 2015)....18

*Piotrowski v. City of Houston*,
237 F.3d 567 (5th Cir. 2001)....15, 16, 18

*Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*,
473 S.W.3d 296 (Tex. 2015)....17

*R2 Invs. LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005)....12

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001)....4

*Richardson Hosp. Auth. v Duru*,
387 S.W.3d 109 (Tex. App.—Dallas 2012, no pet.)....10, 11

*Samtani v. Webb Cnty. Appraisal Dist.*,
285 F. App'x 183 (5th Cir. 2008)....8

*Scott v. Dallas Cty. Appraisal Dist.*,
No. 3:02-CV-0584-D, 2002 WL 1798912 (N.D. Tex. Aug. 2, 2002)....6, 8

*Singer v. Carrington Labs., Inc.*,
2003 WL 22300140, No. 301-cv-1776 (N.D.Tex. Oct. 3, 2003)....16

*Stewart v. City of Irving*,
No. 3:17-CV-3296-G-BK, 2018 WL 3235665 (N.D. Tex. June 7, 2018)....6, 8

*Texas State Library & Archives Commission v. Westmoreland*,
703 S.W.3d 805 (Tex. App. 2024)....10

*Tooke v. City of Mexia*,
197 S.W.3d 325 (Tex. 2006)....................10

*Tornado Bus Co. v. Bus & Coach Am. Corp.*,
No. 3:14-CV-3231-M, 2015 WL 5164731 (N.D. Tex. Sept. 2, 2015) ....................18, 19

*Wallace v. Kato*,
549 U.S. 384 (2007)....................18

*Washington v. Linebarger, Goggan, Blair, Pena & Sampson, LLP (Washington I)*,
338 F.3d 442, 445 (5th Cir. 2003) ....................9

*Washington v. New Orleans City (Washington II)*,
424 F. App'x 307 (5th Cir. 2011) ....................5

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir. 1981), *cert. denied*, 454 U.S. 897 (1981)....................4

**Statutes**

42 U.S.C. § 1983.................... *passim*

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968.................... *passim*

Tax Injunction Act, 28 U.S.C. § 1341 .................... *passim*

Tex. Civ. Prac. & Rem. Code § 16.003(a)....................18

**Other Rules and Authorities**

U.S. Const. amend. XIV ....................13, 14

Fed. R. Civ. P. 12(h)(3)....................4

Fed. R. Civ. P. 12(b)(1)....................4, 5, 21

Fed. R. Civ. P. 8(a) ....................20

Fed. R. Civ. P. 9(b) ....................20

Fed. R. Civ. P. 12(b)(6)....................11, 18, 21

Defendants Dallas County, Dallas County Hospital District (improperly named Parkland Hospital District), Dallas College, Dallas County School Equalization Fund, Dallas Independent School District, and the City of Dallas (collectively, the "Municipal Defendants") respectfully move to dismiss Plaintiffs' Second Amended Complaint ("SAC"), Dkt. No. 27, for the reasons stated herein.

## I. INTRODUCTION

Together with its predecessors in interest, Plaintiff the Dorothy Marshall Living Trust (the "Marshall Trust") has not paid any of the requisite property taxes on its multimillion-dollar Dallas real estate in approximately 50 years. The Marshall Trust's property is the subject of two separate state court tax delinquency judgments: one covering the years 1974-1989, and the other covering the years 1990-1994.[1] It is also the subject of an ongoing state court tax delinquency suit covering the years 1995 to present.[2] Indeed, every alleged action and circumstance that Plaintiffs complain about in this action have been raised by the Marshall Trust as a defense, counterclaim, and/or third-party claim in these state court tax delinquency actions.[3]

This case by the Marshall Trust is a blatant attempt to collaterally attack the state court tax delinquency actions that are being prosecuted against it and to prevent the municipal taxing authorities and their agents from performing their tax collection and enforcement duties. The Tax Injunction Act, 28 U.S.C. § 1341 ("TIA"), along with principles of comity and governmental

---

[1] *County of Dallas, et al. v. Frank W. Marshall, et al.*, No. TX-86-30635 in the 191st District Court, Dallas County, Texas (judgment for tax years 1975-1989) and *County of Dallas, et al. v. Frank W Marshall, et al.*, No. TX-94-30164 in the 95th District Court, Dallas County, Texas (judgment for tax years 1990-1994). Copies of these judgments are included in the separately filed Appendix ("App."). *See* App. at pp. 1-20.

[2] *Dallas, Co. et al., v. Dorothy Marshall Living Trust*, No. TX-22-01916 in the 192nd Judicial District Court, Dallas County, Texas. The live Petition in this matter is included in the Appendix. *See* App. at pp. 21-67.

[3] Relevant excerpts from the applicable state court proceedings are included in the appendix. *See* App. at pp. 68-141.

immunity, absolutely bar subject matter jurisdiction over this action. Furthermore, Plaintiffs fail to state a claim against the Municipal Defendants under the most basic pleading standards. Accordingly, the Court should dismiss this action.

## II. BACKGROUND

The Marshall Trust owns a house and related real estate in Dallas currently valued at more than $3.5 million. SAC at p. 22. The Municipal Defendants have been trying to collect taxes, interest, and penalties on this property for several decades, but they have been met at every turn with litigious tactics by the Marshall Trust and its predecessors in interest. SAC at pp. 18–24. Defendant Linebarger Goggan Blair & Sampson, LLP (the “Linebarger Firm”) has served as collection and litigation counsel for the Municipal Defendants in these efforts. SAC at pp. 2–3, 6–9. Defendant Appraisal and Collection Technologies LLC (“ACT”) licenses accounting software to the Municipal Defendants that they use in connection with their tax administration activities. SAC at p. 9.

Although the Marshall Trust and its predecessors have been litigious, they have repeatedly lost in these state court tax delinquency actions. The Municipal Defendants have obtained and successfully revived judgments for tax years 1974-1994, which the Marshall Trust is continuing to litigate in the Dallas Court of Appeals. App. at pp. 142–155. The Marshall Trust has also recently filed and lost a mandamus proceeding in the Dallas Court of Appeals seeking to stop the ongoing tax delinquency litigation relating to tax years 1995 to the present. App. at pp. 160–163. And the Marshall Trust recently lost on summary judgment with respect to the very same claims that it is asserting against the Linebarger Firm in this action. App. at pp. 164–170. Indeed, the state district court judge, Hon. Robert Burns, even sanctioned counsel for the Marshall Trust (who are the same counsel representing it in this action), finding that their claims against the Linebarger Firm were (1) “groundless and brought for the purpose of harassment,” (2) “filed for an improper

purpose, namely, to intimidate [the taxing authorities'] attorneys and frustrate the collection of taxes on a property for which taxes have not been paid for five decades," and (3) "part of a pattern of bad-faith, dilatory conduct" that "has been designed to delay this case and hinder its prosecution." App. at pp. 171–181.

Unsatisfied with the results in the state court tax delinquency actions, the Marshall Trust (together with the Giles Family Living Trust)[4] has decided to collaterally attack in a federal forum the state tax collection and enforcement activities of the Municipal Defendants and their agents. The gist of Plaintiffs' claims, on behalf of themselves and a putative class of taxpayers, is that Defendants' alleged practices in collecting ad valorem taxes (and related penalties and fees) are illegal because those practices incorporate the use of unaudited and unreliable tax records. SAC at pp. 1–2, 4, 6, 11–19, 22–24, 33, 35–37, 39–41. Based on this core allegation, Plaintiffs have sued the Municipal Defendants for alleged due process violations under 42 U.S.C. § 1983 and for unjust enrichment/money had and received. SAC counts III and IV. And they have sued the Linebarger Firm and ACT for alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). SAC counts I and II.

Regardless of the legal theory Plaintiffs assert, each claim at its core seeks to (1) interfere with the way the Municipal Defendants and their agents fulfill their governmental duties to assess and collect ad valorem taxes, interest, and penalties, and (2) collaterally attack the rulings of the Texas state courts in the tax delinquency actions that are pending against the Marshall Trust. As

[4] While the SAC is replete with allegations about the Marshall Trust's alleged dealings with Defendants, it is almost completely devoid of *any* allegations about any interactions between co-plaintiff the Giles Family Living Trust and Defendants. The only facts alleged about the Giles Trust are that it has been a Dallas County taxpayer throughout the period covered by the complaint, is a proposed class representative, received tax bills for Dallas County since 2017, and the Municipal Defendants hold money which allegedly belong to the Giles Family Living Trust. SAC at pp. 6, 40-41.

set forth herein, this Court should dismiss Plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim.[5]

## III. ARGUMENT & AUTHORITIES

### A. All of Plaintiffs' claims should be dismissed for lack of subject matter jurisdiction.

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of a case for lack of subject matter jurisdiction. On a Rule 12(b)(1) motion, the district court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981), *cert. denied*, 454 U.S. 897 (1981). In ruling on such a motion, the district court may rely on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Id*.

Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing that jurisdiction exists. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A facial attack on jurisdiction requires the district court to accept as true the factual allegations in the complaint only for the limited purpose of determining whether the court has power to hear the case. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Where the district court lacks subject matter jurisdiction, dismissal is mandatory. Fed. R. Civ. P. 12(h)(3).

As set forth below, the Court lacks subject matter here because: (1) Plaintiffs' claims are barred by the TIA and its underlying principle of comity, and (2) Plaintiffs' claim against the Municipal Defendants for unjust enrichment/money had and received is independently barred by the doctrine of governmental immunity.

[5] As additional grounds for dismissal, the Municipal Defendants join the motion to dismiss for lack of Article III standing that is being filed contemporaneously by the Linebarger Firm and ACT.

**1. The TIA and its underlying principle of comity divest this Court of subject matter jurisdiction.**

The TIA provides that "the district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA is "not a narrow statute aimed only at injunctive interference with tax collection, but is rather a broad restriction on federal jurisdiction in suits that impede tax administration." *Washington v. New Orleans City (Washington II)*, 424 F. App'x 307, 310 (5th Cir. 2011) (quoting *A Bonding Co. v. Sunnuck*, 629 F.2d 1127, 1133 (5th Cir. 1980)).

This jurisdiction bar is broad, reaching state law, constitutional, and federal statutory claims alike. Plaintiffs cannot avoid the TIA bar by seeking only monetary damages and not injunctive relief. When combined with the principle of comity[6] that underlies the TIA, the jurisdiction bar also applies to claims for money damages that risk disrupting state or local tax administration. *See Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 115-16 (1981) (holding based on the comity principle underlying the TIA that taxpayers may not bring Section 1983 suits in federal court seeking damages regarding state taxes where an adequate state remedy exists); *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 417, 432 ("the comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration," even when the TIA itself does not bar the suit); *Washington II*, 424 F. App'x 307, 311 (applying the TIA and comity to bar jurisdiction over plaintiff's damages claim and holding that "it is of no import that [plaintiff] seeks only retrospective relief (i.e., restitution,

[6] Where comity deprives a federal court of jurisdiction, Rule 12(b)(1) is the proper procedural vehicle for dismissal. *See Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 116 (1981); *Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990).

damages, fees, and costs)… and not an injunction"); *Dillon v. Mississippi*, 376 F. App'x 421, 424 (5th Cir. 2010) (per curiam) (declaratory and injunctive relief, plus compensatory and punitive damages for past tax assessments, are "precisely the kinds of relief barred by the [TIA]."); *ANR Pipeline Co. v. La. Tax Comm'n*, 646 F.3d 940, 946 (5th Cir. 2011) (finding that plaintiff's requested relief, including claims for damages, are "the classic remedies that the [TIA] bars the federal courts from providing."); *Scott v. Dallas Cty. Appraisal Dist.*, No. 3:02-CV-0584-D, 2002 WL 1798912, at *2 (N.D. Tex. Aug. 2, 2002) (although claims for monetary damages for civil rights violations "may not fall within the ambit of the [TIA]," such claims are "precluded nonetheless" by the comity principle underlying the TIA); *Stewart v. City of Irving*, No. 3:17-CV-3296-G-BK, 2018 WL 3235665, *2-3 (N.D. Tex. June 7, 2018) (holding "the TIA divests this Court of subject matter jurisdiction over [p]laintiffs' claims," including claims seeking to obtain damages of approximately $18 billion because the relief "would disrupt the administration of Texas' tax system, and a plain, speedy, and efficient remedy is available").

Here, all of Plaintiffs' claims are premised on the unsubstantiated assertion that the Municipal Defendants' tax records are faulty because they are unaudited and unreliable. SAC ¶¶ 10-11. Based on this premise, Plaintiffs assert that routine tax collection activities by the Municipal Defendants and their agents and contractors in reliance on those records—such as sending collection letters, calculating tax penalties, and filing delinquency lawsuits—violate RICO (counts I and II), Plaintiffs' due process rights (count III), and equitable principles (count IV). To remedy these violations, Plaintiffs request, on behalf of themselves and a putative class of class taxpayers, an award of damages, treble damages, interest and fees against the Municipal Defendants and their agents and contractors. SAC pp. 41-42.

Adjudicating these claims would require the Court to evaluate: (1) the adequacy and accuracy of the Municipal Defendants' property tax records; (2) whether the tax assessments, levies, and penalties imposed on Plaintiffs and the putative class were correct and lawful; (3) whether the Municipal Defendants' policies regarding tax record-keeping, auditing, and collection met constitutional standards; (4) whether the Municipal Defendants were unjustly enriched by the tax payments they received based on these tax records; and (5) whether decades of tax judgments are erroneous. Each of these inquiries strikes at the core of state tax administration. As the Supreme Court has recognized, comity considerations are "at their strongest" where a federal court "would be required to evaluate state tax policies." *Levin*, 560 U.S. at 431.

Plaintiffs cannot evade the TIA and comity jurisdiction bar by asserting that they "do not seek to enjoin, suspend or restrain the [Municipal Defendants] from the assessment, levy or collection of any tax under state law." SAC ¶ 18. The substance of Plaintiffs' claims would require this Court to evaluate the propriety of the Municipal Defendants' tax collection practices, the adequacy of their tax records, and the lawfulness of penalties and fees imposed in connection with tax collection. These are quintessential state tax administration activities, and any judgment premised on these activities being illegal would effectively prohibit the municipalities from continuing their current tax administration practices. *See National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 590-91 (1995) ("[a]sking a federal court to award damages against a state tax collector based on the alleged illegality of a state tax would be no less disruptive of state tax administration" than an injunction against collection).

Nor can Plaintiffs avoid the bar by bringing the RICO claims (counts I and II) only against the Linebarger Firm and ACT, and not directly against the municipalities themselves. Those claims are directed squarely at the manner in which the Municipal Defendants collect ad valorem

taxes through their agents and contractors. The alleged RICO enterprise expressly includes Dallas County acting through its Tax Office, and the alleged predicate acts consist of mailing delinquent tax statements to taxpayers—a core mechanism of the Municipal Defendants' tax collection system. SAC ¶¶ 22, 25, 82, 84, and 100. Any judgment premised on the Dallas County Tax Office being part of a RICO enterprise, or on the mailing of delinquent tax statements constituting racketeering activity, would effectively prohibit the Municipal Defendants from continuing to use their existing tax collection system. *See Hutchings v. County of Llano*, No. 20-50885, 2022 WL 3716483, at *1 (5th Cir. Aug. 29, 2022) (holding that the TIA barred the district court from considering plaintiff's RICO claims).

Significantly, the Texas state courts are well equipped and able to address the claims Plaintiffs make in this case. If Plaintiffs believe that the Municipal Defendants' tax records are erroneous, and as a result, that Plaintiffs are being overcharged, then they can contest the charges and litigate the dispute in Texas state court. The Fifth Circuit has consistently held in the context of the TIA, comity, and related principles that "[t]he remedies available in the State Courts of Texas are plain, speedy, efficient, and altogether complete." *City of Houston v. Standard-Triumph Motor Co.*, 347 F.2d 194, 200 (5th Cir. 1965); *McQueen v. Bullock*, 907 F.2d 1544, 1550 (5th Cir. 1990) ("Texas has a vast arsenal to assure orderly adjudication of serious federal constitutional questions") (cleaned up); *Samtani v. Webb Cnty. Appraisal Dist.*, 285 F. App'x 183, 183–84 (5th Cir. 2008) (explaining that Texas remedies "provide a procedural vehicle for taxpayers' federal constitutional claims, including a full hearing and judicial determination, with ultimate review available in the United States Supreme Court" (quotation omitted)). Texas provides taxpayers a "menu of remedies." *Stewart*, 2018 WL 3235665, at *3 (quoting *Dawson v. Childs*, 665 F.2d 705, 710 (5th Cir. 1982)); *see also Scott*, 2002 WL 1798912, at *2 (dismissing claims for monetary

damages and injunctive relief for lack of subject matter jurisdiction based on the TIA and noting "Texas law provides procedural vehicles that afford taxpayers the opportunity to raise their serious federal constitutional questions.") (collecting cases).

As noted earlier, a previously filed tax delinquency proceeding is currently pending against the Marshall Trust in Texas state court, and in that proceeding, the Marshall Trust has raised as defenses, counterclaims, and third-party claims the very same allegations of unaudited and unreliable tax records and improper collection practices that Plaintiffs are asserting here. *Supra* at p. 1, n. 3. Indeed, the Marshall Trust and its trustee are actively contesting all the tax liabilities of which they complain, with two pending state court appeals involving the judgments for tax years 1974 to 1994, and a pending application for writ of mandamus to the Texas Supreme Court regarding the ongoing case relating to tax years 1995 to present. *See supra* at p. 2; *see also* App. pp. 156–159. The fact that the Marshall Trust is frustrated with those proceedings provides no basis for Plaintiffs to raise the same claims here. *See Washington v. Linebarger, Goggan, Blair, Pena & Sampson, LLP ("Washington I")*, 338 F.3d 442, 445 (5th Cir. 2003) ("Just because [Plaintiffs] may face formidable defenses in state court, including [judgments against them], this does not mean that a 'plain, speedy and efficient remedy' is unavailable in state court"); *ANR Pipeline Co.*, 646 F.3d at 946-47 ("The state remedy need not be the best of all remedies. [It] need only be adequate.").

### 2. <u>Plaintiffs' unjust enrichment/money had and received claim (count IV) is independently barred by governmental immunity.</u>

Governmental immunity protects political subdivisions, including municipalities, from suit and liability absent a clear legislative or constitutional waiver. *See City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 457 (Tex. 2020) (governmental immunity protects political subdivisions from suits "unless waived by the Legislature through 'clear and unambiguous

language'"); *see also City of Houston v. Corrales*, 713 S.W.3d 427, 430 (Tex. App. 2025) (governmental immunity bars claims against municipalities when the claims arise from governmental functions and immunity exists "absent an applicable waiver by the legislature"). Critically, Texas municipalities enjoy immunity from suit absent a clear and unambiguous legislative waiver, and that immunity extends to common law causes of action, including equitable claims. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Because immunity from suit implicates the Court's subject-matter jurisdiction, dismissal is proper where the pleadings establish that no waiver applies. *See Goss v. City of Houston*, 391 S.W.3d 168, 175 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("when the evidence establishes that the trial court lacks subject matter jurisdiction due to governmental immunity to suit, dismissal with prejudice is proper.") (citing *Harris County v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004)).

It is established under Texas law that unjust enrichment is not an independent cause of action and therefore cannot, on its own, support a waiver of governmental immunity. *See e.g., Richardson Hosp. Auth. v Duru*, 387 S.W.3d 109, 114 (Tex. App.—Dallas 2012, no pet.) ("unjust enrichment is not an independent cause of action… [o]f course, to the extent that an independent cause of action for unjust enrichment does not exist, [appellee's] claim could not fall within a waiver of governmental immunity, and it should have been dismissed."); *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ) ("Unjust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits under circumstances which give rise to an implied or quasi-contractual obligation to return the benefits."); *Texas State Library & Archives Commission v. Westmoreland*, 703 S.W.3d 805 (Tex. App. 2024) ("[u]njust enrichment on its own cannot support a waiver of governmental immunity."). In *Richardson Hospital Authority v. Duru*, the court held that the Texas Legislature

"has not created a waiver of governmental immunity for equitable claims that seek money damages" and that, "regardless of the nature of the equitable claim, if money damages are the remedy sought, then the claim is barred by governmental immunity." 387 S.W.3d at 114.

Similarly, Plaintiffs cannot avoid immunity by recasting the same requested monetary recovery as a claim for money had and received. SAC ¶¶ 127–28. That doctrine is an equitable, quasi-contract theory designed to prevent unjust enrichment where a defendant allegedly holds money that, in equity and good conscience, belongs to the plaintiff. *See Nivens v. City of League City*, 245 S.W.3d 470, 474-75, n.2 (Tex. App. 2007) (holding that claims for money had and received brought against a city collecting ad valorem taxes were barred by governmental immunity).

In *Santander Consumer USA, Inc. v. City of San Antonio*, the court affirmed dismissal of a money had and received claim against a municipality because the plaintiff had not identified any legislative or constitutional waiver of the city's immunity. No. 04-20-00341-CV, 2020 WL 7753730, at *10 (Tex. App.—San Antonio Dec. 30, 2020, no pet.). The same result follows here. Plaintiffs identify no statute, constitutional provision, or other basis waiving immunity for their unjust enrichment/money had and received claim. *See* SAC ¶¶ 123–28. Absent a clear waiver, the Court lacks jurisdiction over the claim pursuant to the principles of governmental immunity. *Santander*, 2020 WL 7753730 at *10.

### B. Plaintiffs' claims against the Municipal Defendants (counts III and IV) should be independently dismissed for failure to state a claim.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court should assume the truth of factual allegations that are "well-

pleaded," it should not accept as true any "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678-79. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Rule 8(a)(2)) (alteration omitted).

Surviving dismissal "require[s] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555. Courts should neither "strain to find inferences favorable to plaintiffs nor accept "conclusory allegations, unwarranted deductions, or legal conclusions." *See, e.g., R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). A "[c]ourt need not credit bare conclusory allegations." *Olaoye v. Wells Fargo Bank, N.A.*, No. 4:11-CV-772-Y, 2012 WL 1082307, at *2 (N.D. Tex. Apr. 2, 2012) (citing *Twombly*, 550 U.S. at 555). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 566 U.S. at 678 (citation omitted).

**1. <u>Plaintiffs have failed to state a Section 1983 claim against the Municipal Defendants.</u>**

Count III of Plaintiffs' SAC asserts a claim under 42 U.S.C. § 1983 against the Municipal Defendants for alleged violations of their due process rights. Plaintiffs allege that the Municipal Defendants deprived Plaintiffs of property without due process of law by generating, mailing, and engaging in collection activities based on allegedly unaudited and unreliable tax records. SAC ¶¶ 113–122. This due process claim fails as a matter of law for two reasons: (1) Plaintiffs have failed to allege a cognizable deprivation of a constitutional right, and (2) Plaintiffs have failed to allege a plausible *Monell* theory of liability.

**a. <u>Plaintiffs fail to allege a cognizable deprivation of a constitutional right.</u>**

To state a claim under Section 1983, a plaintiff must allege facts showing, among other things: (1) a deprivation of a right secured by the Constitution and laws of the United States, and

(2) that the deprivation occurred under color of state law. *See e.g.*, *Hayes v. City of Dallas*, No. 23-CV-2271, 2025 WL 1211268, at *4 (N.D. Tex. Apr. 25, 2025); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (citation omitted). Here, Plaintiffs claim that they were deprived of their constitutional due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Due process requires, at its core, notice and an opportunity to be heard. *Id.* at 348–49.

Here, Plaintiffs' allegations in the SAC fatally undermine any due process claim, because Plaintiffs allege that the Municipal Defendants, through the Dallas County Tax Office, generated, mailed, and collected upon delinquent tax statements. SAC ¶ 115. But the very act of mailing tax statements is the provision of notice required by due process. Plaintiffs do not—and cannot—allege that they were unaware of the tax demands or that they were denied any opportunity to contest those demands. On the contrary, the Marshall Trust has vigorously contested the tax demands that were provided to it, and it has engaged in extensive state court litigation contesting those demands. *See supra* at pp. 2–3. Furthermore, as discussed above, the courts in this circuit have repeatedly recognized that Texas law provides a comprehensive judicial process for taxpayers to utilize in contesting tax assessments and challenging the amounts owed. *See supra* pp. at 8–9. Plaintiffs either have (in the case of the Marshall Trust) or could have (in the case of the Giles Trust) availed themselves of this very process. Thus, they have had an opportunity to be heard.

The substance of Plaintiffs' Section 1983 claim is not really that they were denied process, but rather, that the records underlying the Municipal Defendants' tax demands were allegedly

"unaudited" and "unreliable." *See generally* SAC. But Plaintiffs do not have a constitutional right to require an audit of the Municipal Defendants' tax records, and if Plaintiffs believe the records applicable to their property are erroneous, they—like every taxpayer—are free to contest the accuracy of those records in the Texas state courts. When the state provides adequate procedures to contest and remedy errors, there is no deprivation of due process as a matter of law—even if those procedures were not utilized by the plaintiff or did not produce the outcome the plaintiff desired. *See Parratt v. Taylor*, 451 U.S. 527, 543–44 (1981); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (where a state provides "a meaningful postdeprivation remedy," the deprivation does not violate a plaintiff's rights under the Fourteenth Amendment).[7]

**b. <u>Plaintiffs fail to adequately plead a *Monell* theory of liability.</u>**

Even if Plaintiffs had pled a cognizable deprivation of their constitutional rights—they have not—Plaintiffs' Section 1983 claim independently fails because Plaintiffs have not pled a viable basis to hold the Municipal Defendants liable for the deprivation. Under *Monell*, municipalities cannot be held liable under Section 1983 for conduct of their agents and contractors based on *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) ("municipalities may be sued under § 1983 but cannot be held liable for acts of their employees under a theory of respondeat superior."). Instead, Plaintiffs must demonstrate: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Martinez v. Nueces County*, 71 F.4th 385, 389 (5th Cir. 2023)

[7] Plaintiffs also allege that the Municipal Defendants' "recordkeeping failures" created a "title cloud" that left Plaintiffs' property "functionally unmarketable and unencumberable" and that the Municipal Defendants "have never provided Plaintiffs any administrative or other process by which to obtain a definitive resolution or clearance of this cloud." SAC ¶ 121. But the existence of valid tax liens on property with decades of unpaid taxes is not a constitutional deprivation—it is the lawful consequence of the failure to satisfy one's own tax obligations. Moreover, Plaintiffs have a remedy for this alleged deprivation in the Texas state courts, which they have pursued. *See supra* at pp. 2-3.

(citation omitted). "Moving force" requires a plaintiff to show either that the identified policy is itself unconstitutional, or that "a facially innocuous policy . . . was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001); *see also Liggins v. Duncanville*, 52 F.4th 953, 955 (5th Cir. 2022). Under the deliberate indifference framework, a plaintiff must prove there's a "causal link" between the policy and their alleged harm, and that the defendant had the "requisite degree of culpability." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Deliberate indifference is a "high standard" that requires "a complete disregard of the risk that a violation of a particular constitutional right would follow the decision." *Liggins*, 52 F.4th at 955.

Plaintiffs' *Monell* theory rests on the allegation that the Dallas County Commissioners Court "formally adopted and repeatedly renewed" a policy of "exclusive reliance" on the Linebarger Firm's and ACT's records system for "delinquent tax collection" and that it continued this policy after "receiving actual notice of the FY2017 and FY2020 Auditor findings." SAC ¶ 116. But this allegation does not describe a "policy" to deprive Plaintiffs of due process. The Municipal Defendants' decision to retain the Linebarger Firm to collect delinquent taxes and utilize ACT's software in connection with their tax administration activities is an ordinary governmental contracting decision, not a deliberate choice to enact a policy to violate Plaintiffs' constitutional rights. A municipality does not adopt a policy of constitutional deprivation simply because it renews a professional services contract with a provider after receiving routine audit reports identifying procedural recommendations. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) (refusing to expand municipal liability to situations where the plaintiff failed to identify a

pattern of violation and offered only a hypothesis that a policymaker should have taken different action).

Further, Plaintiffs have wholly failed to plead facts establishing the causal nexus between a policy and any constitutional deprivation. *See Piotrowski*, 237 F.3d at 580 ("The plaintiff must also demonstrate a direct causal link between the municipal policy and the constitutional deprivation."). Indeed, the SAC focuses largely on the Linebarger Firm's alleged conduct rather than the Municipal Defendants' alleged policy, with Plaintiffs arguing that the Municipal Defendants "abdicated" their oversight role. SAC ¶ 25. But conclusory allegations of inadequate oversight over an independent contractor cannot establish that a municipal policy was the "moving force" behind the contractor's alleged misconduct. *See Piotrowski*, 237 F.3d at 580 (the requirements of a causal link (i.e., moving force) and degree of culpability (i.e., deliberate indifference) "must not be diluted, for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'") (citation omitted). Plaintiffs' allegation that the Municipal Defendants' "broad contractual indemnification" of the Linebarger Firm "insulated the Commissioners Court from the financial consequences of exactly the kind of misconduct alleged," underscores the absence of any causal link. SAC ¶ 119. An indemnification provision is a standard risk-allocation mechanism in municipal contracting—it does not constitute a municipal policy to permit constitutional violations or demonstrate deliberate indifference.

#### 2. **Plaintiffs have failed to state a claim for unjust enrichment/money had and received against the Municipal Defendants.**

Count IV of the SAC asserts an unjust enrichment/money had and received claim against the Municipal Defendants. SAC ¶¶ 122–128. To state an unjust enrichment claim, a plaintiff must show that: (1) the defendant received a benefit; (2) that was to the detriment of the plaintiff; (3)

under circumstances that make retention inequitable. *Singer v. Carrington Labs., Inc.*, 2003 WL 22300140, No. 301-cv-1776, at *4 (N.D.Tex. Oct. 3, 2003). Similarly, to state a claim for money had and received, "a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him." *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) (quoting *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 814 (Tex. App.—Dallas 2012, no pet.)).

Here, Plaintiffs allege that "each Municipal Defendant receives a share of amounts collected by the Dallas County Tax Office under the interlocal collection arrangement," including "amounts attributable to penalties, interest, and fees generated from the unverified, unaudited records." SAC ¶ 124. Plaintiffs describe the claim as "limited to the portion of amounts paid from records denied to the County Auditor, which each Municipal Defendant received and retained." *Id.* at ¶ 126. Yet the SAC never identifies any payments made by Plaintiffs to any Municipal Defendant based on inaccurate tax records. The Marshall Trust has not made any payments ***at all***. And although the Giles Trust alleges that it is a "property-tax-paying resident," *Id.* at ¶ 125, it does not allege that any of the payments it made were based on inaccurate tax records or that any inaccuracies in the records resulted in an overpayment by the Giles Trust. Rather, it merely speculates that because certain records were "unaudited," some unquantified portion of the taxes it paid might have been have excessive. But that is the very definition of a speculative, conclusory allegation that *Twombly* and *Iqbal* forbid. Just because certain records were unaudited, it does not mean that the tax records relating to the Giles Trust were inaccurate or that any such inaccuracies resulted in overpayment by the Giles Trust. Indeed, considering that the Giles Trust appears to have paid its assessments without protest, the most likely inference that can be drawn from its allegations is that its tax assessments were correct or, if they were erroneous, the errors favored

the Giles Trust. As a matter of law, such allegations do not state a viable claim for unjust enrichment or money had and received.

**3. <u>Counts III and IV are also barred by the two-year statute of limitations.</u>**

Even if the Court had jurisdiction and Plaintiffs had otherwise stated a claim, counts III and IV are time-barred on the face of the SAC. Dismissal under Rule 12(b)(6) is appropriate where "it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). That is the case here.

Section 1983 contains no limitations period of its own; federal courts borrow the forum state's general personal-injury limitations period, which in Texas is two years. *Owens v. Okure*, 488 U.S. 235, 249–50 (1989); *Piotrowski*, 237 F.3d at 576; Tex. Civ. Prac. & Rem. Code § 16.003(a). The same two-year period governs claims for unjust enrichment. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 870–71 (Tex. 2007) (per curiam). The Northern District of Texas has likewise held that the same two-year period governs claims for money had and received. *See e.g.*, *Tornado Bus Co. v. Bus & Coach Am. Corp.*, No. 3:14-CV-3231-M, 2015 WL 5164731, at *6 (N.D. Tex. Sept. 2, 2015) ("A claim for money had and received is subject to a two-year statute of limitations"); *Payne v. Wells Fargo Bank, N.A.*, No. 3:12-CV-5219, 2015 WL 1402321, at *5 (N.D. Tex. Mar. 26, 2015) ("There is a 2–year statute of limitations for money had and received claims."). Plaintiffs commenced this action on April 5, 2026. Dkt. No. 1. Any claim that accrued before April 5, 2024 is therefore barred.

Although the limitations period is borrowed from state law, the accrual of a Section 1983 claim is governed by federal law, under which a claim accrues when the plaintiff knows or has reason to know of the injury that forms the basis of the action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Piotrowski*, 237 F.3d at 576. Here, Plaintiffs' own allegations establish that Plaintiffs

knew of their alleged injuries, and of those allegedly responsible, many years before April 2024. According to the SAC:

- On February 17, 2014, the Trustee received a delinquent tax statement that she contends was erroneous, and she promptly notified the Linebarger Firm of the alleged "error in the amount due." SAC ¶¶ 51–52.

- The Linebarger Firm then filed suit in 2014 on what Plaintiffs characterize as "unreliable records," which allegedly made it "impossible for Trustee to secure a loan." *Id*. at ¶ 53.

- On August 15, 2017, the Trustee was allegedly told by the Linebarger Firm's lead counsel that the taxing authorities' records "did not accurately represent taxes owed" and were "plagued" with problems. *Id*. at ¶ 55.

- In June 2018 and July 2022, the Dallas County Auditor released its official audit reports on which Plaintiffs rely to assert that the Municipal Defendants' tax records are unaudited and unreliable. *Id.* at ¶¶ 36–37.

- And Plaintiffs affirmatively plead that the Trustee has been in a "state of limbo for 12 years"—unable to obtain a mortgage or sell the property—which is the very same alienability injury on which count III is premised. *Id*. at ¶¶ 70, 118, 121.

Count IV fares no better. A claim for unjust enrichment or money had and received accrues upon the defendant's receipt of the payment at issue. *See e.g.*, *Tornado Bus*, 2015 WL 5164731, at *6 ("the cause of action arises when a party obtains money that, in equity and good conscience, belongs to another."). The Marshall Trust alleges no payments at all, and the Giles Trust alleges that it has paid taxes based on tax bills received "each and every year since 2017." SAC ¶¶ 20, 125. Any claim to recover amounts paid before April 5, 2024 is time-barred.

### C. <u>Plaintiffs' claims independently fail for multiple additional reasons.</u>

In addition to the foregoing dismissal grounds, Plaintiffs' claims enumerated in the SAC fail for multiple independent reasons.

First, the central focus of all Plaintiffs claims is the alleged conduct of the Linebarger Firm on behalf of the Municipal Defendants in collecting ad valorem taxes and related interest, penalties and legal fees. However, in the state court tax proceedings, the state court has issued summary

judgment in the Linebarger Firm's favor on all those claims, and even sanctioned Plaintiffs' counsel for bringing them. *See* App. pp. 164–181. In doing so, the court expressly found the claims to be "groundless in fact and law," "filed and brought in bad faith," and "brought for the purpose of harassment." App. p. 179, ¶ 23. And the court even found that the sanctionable claims are the "same claims" that Plaintiffs are asserting here, in this federal case. *Id.* at ¶ 24. Additionally, the Municipal Defendants have obtained two prior tax delinquency judgments against the Marshall Trust's property that Plaintiffs are attempting to collaterally attack here. Unquestionably, principles of collateral estoppel, res judicata and the *Rooker-Feldman* doctrine preclude Plaintiffs from re-litigating these claims here.

Second, Plaintiffs' SAC asserts RICO claims that sound in fraud, and thus, are subject to the heightened pleading requirements of Rule 9(b). However, Plaintiffs have wholly failed to allege the types of plausible, specific facts needed to establish a RICO enterprise, a control person, predicate illegal acts, fraud, and damages. Instead, they rely on conclusory, unplausible allegations that the state court has already found to be "groundless" and brought in "bad faith."

Third, Plaintiffs' SAC is replete with complaints about the way Defendants used the Texas court system to file and prosecute tax collection lawsuits, recover tax penalties and fees, obtain favorable tax delinquency judgments, and revive previous tax delinquency judgments. SAC ¶¶ 47–70. This type of government-petitioning activity is protected by the *Noerr-Pennington* doctrine and cannot provide a basis for Defendants' liability to Plaintiffs.

Fourth, the Giles Family Living Trust is a co-plaintiff that has alleged no facts about its own claims, damages, and dealings with Defendants. It has not even attempted to meet the pleading requirements of Rule 8(a), let alone 9(b). It appears to have paid its taxes without protest and without following the Texas statutory procedures for contesting tax assessments and obtaining

refunds of erroneous overpayments. Thus, its claims are barred by the voluntary payment doctrine and the existence of an adequate remedy at law.

In the interest of judicial economy and to prevent potentially redundant or unnecessary briefing, Defendants respectfully request this Court defer briefing on these and all other additional bases for dismissal until after it decides the threshold jurisdictional and legal questions briefed herein and in the contemporaneous motion to dismiss filed by the Linebarger Firm and Act.

## IV. CONCLUSION

For the reasons stated herein, the Municipal Defendants request that:

(1) The Court dismiss all claims asserted in the SAC for lack of subject matter jurisdiction under Rule 12(b)(1);

(2) The Court dismiss all claims asserted against the Municipal Defendants in the SAC (counts III and IV) for failure to state a claim under Rule 12(b)(6); and

(3) The Court defer briefing on all other grounds for dismissal pending its ruling on the foregoing motions.

Dated: September 30, 2026

Respectfully submitted,

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Robert T. Mowrey*

**Robert T. Mowrey**
State Bar No. 14607500
rob.mowrey@troutman.com
**Roger B. Cowie**
State Bar No. 00783886
roger.cowie@troutman.com
**Kaci M. Jones**
State Bar No. 24136933
kaci.jones@troutman.com
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
T: (214) 740-8000
F: (214) 740-8800

*Counsel for Defendants Dallas County, Dallas County Hospital District (improperly named Parkland Hospital District), Dallas College, Dallas County School Equalization Fund, Dallas Independent School District, and the City of Dallas.*

## CERTIFICATE OF SERVICE

I certify that on September 30, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the counsel who have registered with this Court.

/s/ *Robert T. Mowrey*
Robert T. Mowrey